## M. J. WHITWORTH *et. al. v.* STEPHEN TILMAN.

1. PRINCIPAL AND SURETY: PRINCIPAL LIABLE FOR COST PAID BY SURETY.—Court costs, incurred in litigation instituted by the principal and subsequently paid by the surety, are recoverable from the principal.

2. SAME: PRINCIPAL NOT LIABLE FOR EXPENSES UNNECESSARILY INCURRED.—A principal is not liable for costs and expenses unnecessarily incurred by the surety in litigation, instituted and carried on by him in order to get rid of his liability, or to defeat the efforts of a party seeking to enforce it.

3. SAME: TO RECOVER COSTS AND EXPENSES, WHAT SURETY MUST SHOW.—It is incumbent on the surety, seeking to recover from the principal costs and expenses incurred in litigation, to show that the litigation was entered into in good faith and upon reasonable grounds, and was a measure of defence, necessary to the interest of both parties, and was calculated so to result.

4. SAME: SAME.—As a means of showing good faith on the part of the surety, it is proper, and sometimes necessary, for him to give notice to the principal of the commencement of a suit against him, in order to enable the principal to pursue that course which he thinks best for his own safety, with reference to the claim against the surety, and to the consequences of that action to himself.

5. SAME: COMPROMISE OF CLAIM: PRINCIPAL LIABLE FOR EXPENSES IN OBTAINING.— The principal is liable to the surety for costs and expenses incurred in litigation, which resulted in a compromise of the claim beneficial to the principal.

APPEAL from the Chancery Court of Lawrence county. Hon. John E. McNair, judge.

Whitworth et al. *v.* Tilman.

A judgment was confessed in the office of the clerk of the Circuit Court of Copiah county, by William Matheny and William Hudson, in favor of Joseph S. Totten, for the sum of twenty-two hundred and thirty-three dollars. The judgment was made final at the May term, A. D. 1837, of said court. A writ of error, to reverse this judgment, was sued out and dismissed for want of prosecution. An execution issued and was levied on property of defendant Matheny. A "forthcoming bond" was given, which on motion was quashed. By agreement of counsel, another execution was issued, returnable to the November term, 1839, of the Circuit Court of Copiah county. This execution was levied on the property of Matheny, who gave a forthcoming bond. Various other proceedings were had, when, on the 28th January, 1840, an execution was issued on this forfeited forthcoming bond, which was levied on property of Matheny. Matheny claimed the benefit of the "valuation law," passed 21st February, 1840, and, in consequence thereof, the property was sold on a credit of twelve months. William Hudson became the purchaser for the sum of twenty-four hundred and five dollars, and executed his bond, with Stephen Tilman (appellee) and others, securities, payable twelve months after date, as required by the "valuation law." Hudson failed to pay the bond, and the law provided that it should have the force and effect of a judgment. At the May term, 1841, of the Circuit Court, Hudson moved to quash the bond taken under the valuation law. This motion was overruled and an execution issued against Hudson and sureties. This execution was superseded, and a writ of error prosecuted to the judgment of the Circuit Court, refusing to quash the bond. Whilst the cause was pending in the High Court of Errors and Appeals, Hudson died, and it was revived in the name of his administrators.

At the January term, 1844, of the High Court of Errors and Appeals, the judgment of the Circuit Court, in refusing to quash the bond, was affirmed.

In 1849, the estate of William Hudson was distributed amongst his heirs, the administrators discharged, and their accounts finally closed.

On the 8th day of July, 1852, an execution was issued by the clerk of the Circuit Court of Copiah county against William Hudson, as principal, and Stephen Tilman and others, securities on the bond, executed on the 23d of April, 1840, under the " valuation law." This execution was levied on the property of Stephen Tilman. A motion was made at the December term, 1852, of the Circuit Court, to quash the execution ; which motion was sustained by the court. The plaintiff in the execution sued out a writ of error, and the High Court of Errors and Appeals reversed the judgment of the Circuit Court, and awarded a new execution on the bond, executed under the " valuation law." A new execution was issued and levied on certain slaves, as the property of Stephen Tilman. The slaves were claimed by Robert Miller, who enjoined the sale.

During the pendency of this injunction suit, the judgment against Tilman was compromised by his paying the sum of three thousand dollars and costs of suit.

Tilman filed his bill in the court below to recover, from the heirs of Hudson, the sum of three thousand dollars, also court costs and attorneys' fees paid by him, and incurred in the litigation referred to, both before and after the death of Hudson. The court below rendered a decree in favor of Tilman for the sum of three thousand dollars, and also for the costs and attorneys' fees, which were incurred both *before* and *after* the death of Hudson. Of this decree, the heirs of Hudson, who are the appellants, complain and have appealed to this court.

*Harris* and *Hurst*, for appellants.

The decree for costs of the litigation, voluntarily commenced and protracted by Tilman, and for attorneys' fees, is unwarranted. It is settled law that the surety has no such claim. Sedgwick on Dam., 335, 339, 340.

It is replied to this, that in this case there are peculiar circumstances; that Tilman's litigation was profitable to the heirs of Hudson, in this, that he reduced the claim from about six thousand dollars to three thousand dollars ; and that the expenses of this litigation should be borne by Hudson's estate.

This pretension is not entitled to much consideration. In 1844, the debt did not exceed the sum of three thousand dollars. Tilman undertook to litigate, after all grounds of legitimate controversy had been swept away; he protracted the litigation for sixteen years, and the debt swelled from three to six thousand dollars by the accumulation of interest, and "he claims it as a merit, that, by a dexterous compromise, he got rid of the interest which his skilful management had added to the debt."

The litigation of Tilman was voluntary, and, unless he can show that it was carried on at the request of his principal, he cannot recover attorneys' fees and costs incurred in that litigation. Up to 1844, the costs are properly chargeable to Hudson's estate. Sedgwick on Dam., 297, 335.

*Yerger* and *Rucks*, for appellee.

The rule is clearly laid down, that the principal is bound to indemnify the surety for the amount that he is compelled to pay, including therein, if sued, reasonable expenses and costs in defending the suit. 17 Mass. R. 169; 3 Parsons on Contracts, 5 Ed. 185, 186 *et seq.*

In this amount of reasonable expenses are included the attorneys' fees, reasonable and proper to defend the case. 3 Parsons on Contracts, 5 Ed. 164, 212, and cases there cited.

Some of the authorities do not recognize the right of the surety to recover from the principal attorneys' fees, upon the ground that, as the surety owed the debt, he ought to have paid it without suit. Though this may be true as a general principle, yet it is not applicable to the facts of this case.

If Tilman had paid the whole amount of the judgment, instead of the sum at which it was compromised, it certainly could have been collected out of the estate of Hudson; or if a stranger had bought from Totten the judgment for three thousand dollars, he could have collected the whole amount from appellants, regardless of the price paid for it. But as Tilman was a surety, and effected a compromise of the claim for a less sum than the whole amount due, equity and law have fixed the rule, that he shall not call on the principal for the

whole amount of the claim, but only for *indemnity* against loss.

What will indemnify Tillman against loss? To effect the compromise he has to pay $3,000 to Totten, $189 for costs, and $550 in attorneys' fees, and *indemnity against* loss would be to pay him these sums with interest.

Equity and law give the principal the benefit of a compromise made by the surety—and they both demand that a principal, who desires and receives the benefit of a compromise, should reimburse all that the surety has expended, and give him full indemnity against loss. By this rule, even-handed justice will be meted out to principal and surety.

HANDY, C. J., delivered the opinion of the court.

This bill was filed by the appellee, a surety for one Hudson, on a bond, against the distributees of the principal, to recover a sum of money paid by the appellee on account of that suretyship, and certain costs and expenses incurred and paid by him in consequence of litigation carried on by him in relation to his liability.

The bill shows, that the appellee became surety on a bond for $2,405, executed by Hudson, in April, 1840, for the purchase money of certain property purchased at sheriff's sale under execution by Hudson, which bond was executed under the valuation law, then in force, and was payable in twelve months from its date; that at April term, 1841, of the Circuit Court, a motion was made to quash the bond, but the motion was overruled, and that in October, 1841, an execution was issued on the bond against principal and surety, which was levied on certain property, but the execution was superseded, and a writ of error presented to this court to the judgment overruling the aforesaid motion to quash, and at January term, 1844, that judgment was affirmed in this court, and judgment was rendered here against the administrator of Hudson, who had died pending the writ of error, and against the surety on the bond. It further shows that, about the year 1849, Hudson's estate was legally distributed by his administrator, to and

among the appellants, his distributees, and the administration finally settled. It also shows that an execution was issued on the bond to December term, 1852, and was levied on certain lands of this surety, who thereupon made a motion in the Circuit Court to quash the execution; that this motion was granted, and a writ of error thereto prosecuted to this court, and, at the October term, 1854, that this judgment was reversed and a new execution issued on the bond, and was levied on certain personal property of the surety, but that property was claimed by one Miller, who filed his bill in equity enjoining the sale of it; that pending that proceeding, the surety made a compromise with the plaintiff in the execution, by which he paid the sum of $3,000, which was received in satisfaction of the debt. This sum and certain sums paid by the surety for costs incurred, both by the litigation carried on during Hudson's lifetime and since his death, and for counsel fees in the litigation since his death, were sought to be recovered by the bill; and a decree was rendered accordingly in the court below.

As to the legal costs incurred by the litigation, instituted by the principal in his lifetime, in which the surety was joined, and which were subsequently paid by the latter, there can be no doubt that such costs were properly recovered by the surety. And it is not controverted here that he was entitled to recover the sum of $3,000, paid by him by way of compromise of the execution. But it is insisted that the decree is erroneous, in awarding to him the costs taxed, and the counsel fees paid by him on account of the litigation which he instituted and carried on after the death of the principal, and after the determination of the litigation instituted by him which was determined after his death.

It is well settled, and on sound reason, that a surety cannot charge his principal with costs and expenses *unnecessarily* incurred by litigation instituted and carried on by him in order to get rid of his liability or to defeat the efforts of the plaintiff to enforce it ( *Wynn* v. *Brooke*, 5 Rawle, 106; Sedgwick on Damages, 297, 335); and it appears to be incumbent on the surety seeking to recover costs and expenses from his principal,

to show that the litigation was entered into by him in good faith and upon reasonable grounds, and as a measure of defence proper to the interests of both parties. 3 Parsons on Contracts, 213 (5 edition). As a means of showing good faith, it is often proper, and sometimes necessary, in the commencement of a suit against the surety, that he shall give notice to his principal, in order to enable him to pursue the course that he thinks best for his own safety with reference to the claim against the surety, and to the consequences of that action to himself. But if no notice be given, and if the surety do not show that he undertook the litigation in good faith and upon reasonable grounds, and in order to protect the interests of the principal as well as his own, and that it was calculated so to result, he cannot recover against the principal the costs and expenses of his litigation.

Upon these principles, this decree cannot stand, as to the costs and expenses incurred subsequent to 1844. That litigation was entered into by the surety after the death of the principal, and after the litigation commenced by him had been determined and had resulted in a judgment of this court fully establishing the liability of the principal and surety, in a writ of error in which they were joined. There is no showing, either by the allegations of the bill, or by the proofs, that this litigation of the surety was undertaken upon any reasonable grounds of success, or with any view of protecting the interest of the principal; but it would rather appear to the contrary, as it was all unsuccessful, that it was resorted to as the means of preventing the enforcement of the execution against the surety.

It is said that it resulted in a benefit to the principal, because it enabled the surety to compromise and settle the sum due on the execution for about half its amount. But this does not appear to have been caused by the litigation conducted by the surety after the principal's death; for that was all ended and the judgment was finally fixed for its full amount against the surety. It was not until execution on that judgment had been issued and levied on property claimed by Miller, the sale of which was enjoined by him, that the surety made the compromise.

It does not appear, and could scarcely be said, that the surety was privy to that proceeding, and hence it does not appear that the litigation of the surety had any effect in producing the compromise. But, in addition to this, the amount of the judgment was largely increased by the accumulation of interest upon it, occasioned by the litigation from 1844, after the principal's death, to the time of the compromise in 1858; and, at the time the judgment was rendered in this court, finally fixing the liability of the principal and surety on the claim, the judgment was about of the same amount as that paid by the surety in the compromise. If he had paid it then, as it appears he was bound to do, the large accumulation of interest would have been prevented, and he might, for aught that appears, have recovered the amount paid by him, out of the estate of the principal. It thus appears that he cannot claim to have benefited the estate of the principal by the compromise, and thereby charge it with the expenses of an unnecessary and protracted litigation conducted by him.

It follows that the decree is erroneous and must be reversed, and that a decree must be made here, correcting these errors, in accordance with the views herein stated. And a new decree is ordered accordingly.