NATIONAL SURETY CORPORATION *v.* VANDEVENDER

No. 41027 February 16, 1959 108 So. 2d 860

278

*Robertshaw & Mansour,* Greenville, for appellant.

*Webb & Webb,* Greenville, for appellee.

APPELLANT IN REPLY.

GILLESPIE, J.

Appellee, Leonard G. Vandevender, applied to appellant, National Surety Corporation, for a constable's bond, the application containing the following agreement on the part of appellee:

"(b) To indemnify Surety, its successors and assigns, against all loss, liability, costs, damages, attorney's fees and expenses which Surety shall sustain or incur in consequence of executing the bond herein applied for, or any renewal thereof, or any bond in behalf of the undersigned, in making any investigation on account of such bond, in prosecuting or defending any action that may be brought in connection therewith, or in enforcing any of the agreements herein contained. . ."

The bond was executed by appellant as surety and appellee as principal, and while it was in effect, W. D. Nichols sued appellee and appellant demanding judgment for $7,500 against appellee, and $2,000, the amount of the bond, against appellant. Nichols alleged in his suit that appellee assaulted him while acting as constable. After

appellee and appellant were summoned in the Nichols suit, appellant wrote appellee the following letter:

"Dear Mr. Vandevender:

"National Surety received notice of suit filed against you on behalf of W. D. Nichols, and after reviewing the matter determined that suit is filed against you personally, in the amount of $7,500.00 and against National Surety Corporation in the amount of your bond, which is $2,000.00.

"Please accept this letter as notice that National Surety Corporation expects you to defend this suit at your expense and should any expenditures be made by National Surety in investigating, defending, or otherwise protecting your interest and National Surety's interest, you will be expected to reimburse National Surety Corporation for same.

"This point is stated in your Public Official Bond Application wherein it is stated the undersigned, for himself, his heirs, executives, administrators, hereby agrees with National Surety Corporation, hereinafter called Surety: —(b) to indemnify the surety, its successors and assigns against all loss, liability, costs, damages, attorney's fees and expenses which the surety shall sustain or incur in consequence of executing the bond herein applied for or any renewal thereof of any other bond on behalf of the undersigned, in making any investigation on account of such bond, in prosecuting or defending any action that may be brought in connection therewith or with enforcing any of the agreements herein contained.

"This matter was referred to Attorneys Wynn, Hafter, Lake & Tindall in Greenville, Mississippi, for review to determine various rights of parties involved. You may if you wish have these attorneys continue in defending this suit on your behalf or you have the option of retaining other attorneys of your own choice.

"National Surety Corporation does, however, retain the right to have counsel assist at any time in defending this action."

Sometime after the receipt of this letter, the exact sequence of events not appearing in the record, appellee employed and paid B. B. Wilkes, an able and experienced attorney, to defend the Nichols suit. He also conferred with J. A. Lake, a member of the law firm of Wynn, Haftter, Lake & Tindall, along with Wilkes, in preparing the suit for trial. Wilkes and Lake worked together in successfully defeating the claim of Nichols in the circuit court. Nichols appealed to this Court and the case was affirmed. No one ever suggested to appellee that he would be expected to pay the fee charged by Wynn, Haftter, Lake & Tindall until after the Nichols case was terminated in this Court. Lake told appellee that he was representing appellant. Appellee never employed Wynn, Hafter, Lake & Tindall. Appellant did.

After the Nichols suit was terminated, appellant paid Wynn, Hafter, Lake & Tindall $1,000 attorneys' fee and $81.20 expenses in connection with the defense of the Nichols suit. The record shows without dispute that this fee was reasonable. The present suit was brought in the county court by appellant against appellee to recover said sum of $1,081.20 under the indemnity agreement mentioned above. The jury in the county court returned a verdict for appellant for the sum of $81.20, the amount of expenses in the Nichols suit, as to which expense there is no dispute between the parties. Appellant appealed to the circuit court where the county court judgment was affirmed. Appellant now appeals to this Court seeking judgment for the full sum sued for.

██ ██ We assume that, except for the question of estoppel, hereinafter discussed, appellant was entitled to reimbursement from appellee of all reasonable sums paid out by it in good faith in defending the Nichols suit, including fees for attorneys of appellant's choice. We are

of the opinion that under the evidence and all reasonable inferences to be drawn therefrom, the finding was justified that appellee, judged by the standard of a reasonable and prudent man, believed that under the directions contained in the letter of May 18, 1954, mentioned above, if he employed either the firm of Wynn, Hafter, Lake & Tindall, or, at appellee's option, other attorneys of his choice, to defend the Nichols suit, his obligation to appellant under the indemnity agreement would be fulfilled as far as attorneys' fees were concerned. This constituted, in legal contemplation, a waiver on the part of appellant to claim reimbursement for attorneys' fees charged by attorneys other than the one chosen by appellee. This waiver was gratuitous and would not have been binding on appellant had not appellee acted in reliance thereon; but appellee did act on the waiver by employing and paying Wilkes to defend the Nichols suit, and appellant could not later withdraw the waiver except to the prejudice of appellee, by requiring him to pay for the services of two attorneys to defend the same suit. There was no conflict of interest between appellee and appellant in the defense of the Nichols suit. This brings the case within the doctrine of equitable estoppel by waiver, which is available in the law courts.

██ Where a party to a transaction induces another to act on a reasonable belief that he has waived or will waive certain rights, which he is entitled to assert, he will be estopped to insist on such rights to the prejudice of the one misled. 31 C. J. S., Estoppel, Section 108, page 344.

The letter of May 18, 1954, in its first paragraph, advised appellee of the Nichols suit. The second paragraph of the letter put appellee on notice that appellee was expected to defend the suit at appellee's expense. The balance of the letter, except the next to the last paragraph, set forth the rights that appellant had under the indemnity agreement. These rights were set out in general terms

in contrast to the specific terms contained in the next to the last paragraph where appellee was told that he would have the option of employing Wynn, Hafter, Lake & Tindall, or attorneys of his choice. We think it was entirely reasonable and probable that appellee would understand that, as far as paying attorneys was concerned, he would fulfill his obligation under the contract by employing attorneys of his choice. This he did, and the record clearly indicates he acted in good faith. If appellant expected reimbursement for fees paid Wynn, Hafter, Lake & Tindall after writing the letter of May 18, 1954, it should have so advised appellee before Wilkes was employed.

 Appellee did not request, and the trial court did not give, an instruction on the doctrine of estoppel. This is not fatal. We affirmed judgment for plaintiff in J. C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779, when the case was submitted to the jury without any instructions for appellee. Cf. Masonite Co. v. Lochridge, 163 Miss. 364, 140 So. 223; Producers Gin Assn. v. Beck, 215 Miss. 263, 60 So. 2d 642. This Court has never commended the practice of relying on issues concerning which the jury is not instructed. Many authorities have condemned it. But in this jurisdiction the jury has the right to determine issues made by the pleadings and the evidence, notwithstanding no instruction is given on the issues. If the pleadings and the evidence justify a result reached by the jury, we will not reverse for failure of the successful party to have the jury instructed on the issues.

 It may be argued with some apparent force that we are resolving the case on the doctrine of estoppel when the jury that decided the facts was not instructed on the doctrine, and, therefore, could not have understood the nature or elements of that doctrine. It is probably true that the jury did not consider estoppel as a theory, but this was not necessary in order for the jury to apply the doctrine, which is based on common sense and fair dealings between men. It has been said that the compulsion

of the doctrine of estoppel is one of fair play. McNeely v. Walters, 211 N. C. 112, 189 S. E. 114. Estoppel weighs and considers the conduct of men in their dealings with each other and gives that effect and meaning to their actions which common sense and justice dictates. Palmer v. Sovereign Camp W. O. W., 15 S. E. 2d 655 (S. C.). Even so, the doctrine may not be invoked unless all the elements of estoppel are present.

We have considered all contentions made by appellant and find no reversible error.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.