**Arthur JACKSON, Plaintiff-Appellant,**

v.

**STATE OF MISSISSIPPI et al., Defendants-Appellees.**

No. 79–3614.

United States Court of Appeals, Fifth Circuit. Unit A

May 14, 1981.

Roy Campbell, III, Greenville, Miss., James L. Robertson, c/o Freeland & Gafford, Oxford, Miss., for U. S. Fidelity and Guaranty Co.

Before GOLDBERG, CHARLES CLARK, and REAVLEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Arthur Jackson, an inmate of the Mississippi State Penitentiary (Parchman), filed this 42 U.S.C. § 1983 action alleging deprivation of his constitutional rights when he was injured by a pellet from a shotgun fired by a fellow prisoner guard. Relying on pendent jurisdiction, Jackson also asserted parallel claims under state law. The outcome of this appeal is governed largely by two prior cases, *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978), and *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980). In addition, we must consider the summary judgment procedure followed and the effect of an injunction ordering enforcement of specific constitutional rights of Parchman prisoners. We affirm in part, vacate in part, and reverse and remand in part.

In October 1972, Arthur Jackson began serving at Parchman a five-year prison term for armed robbery. On February 6, 1973, Jackson and other prisoners were boarding a bus to be transported to a vocational school at the penitentiary. As was the practice at that time, another prisoner designated as a "trusty shooter" was guarding these inmates with a shotgun. Noticing that some inmates were pushing to the front of the line to get a seat on the bus, the trusty shooter fired a warning shot. One of the pellets from this 00 buckshot load penetrated Jackson's left eyeball. Jackson was taken to the prison's medical facilities where the doctor on duty cleaned and dressed the wound. The doctor called the University Hospital in Jackson, Mississippi, for advice and was told to have Jackson transported to that hospital. He did so.

Barbara Phillips, Lawyers Comm. for Civil Rights Under Law, Frank R. Parker, Jackson, Miss., for plaintiff-appellant.

P. Roger Googe, Jr., C. Bradshaw Farber, Asst. Attys. Gen., Jackson, Miss., for State of Miss. and Hollowell, et al.

Freeland & Gafford, James L. Robertson, Oxford, Miss., for Granite State Ins. Co. and New Hampshire Ins. Co.

Jimmie B. Reynolds, Jr., Jackson, Miss., for St. Paul Fire & Marine Ins. Co.

The drive took approximately three hours. At the University Hospital, Jackson's eye was surgically removed.

Jackson, acting pro se, wrote a letter to the district judge on May 22, 1973. The district court construed the letter as a complaint, appointed counsel for Jackson, and allowed him to amend his complaint. The amended complaint named as defendants four prison officials and five members of the Mississippi State Penitentiary Board (Board). The case was held in abeyance pending the trial and appeal of *Bogard v. Cook*, 405 F.Supp. 1202 (N.D.Miss.1975), aff'd, 586 F.2d 399 (5th Cir. 1978), *cert. denied*, 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). On July 30, 1979, the district court granted summary judgment in favor of all defendants. This appeal followed.

Jackson argues that the defendants failed to meet their dual burden of demonstrating that no genuine issue of material fact existed and that they were entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In reviewing the district court's rulings on summary judgment motions, we also apply the standard of Fed. R.Civ.P. 56(c). Wright & Miller, Federal Practice and Procedure: Civil § 2716 at 430. As to the existence of a genuine issue of material fact, we view the record in the light most favorable to the party opposing the motion for summary judgment. *Cubbage v. Averett*, 626 F.2d 1307, 1308 (5th Cir. 1980).

With respect to the defendant Board members, Jackson asserts three main issues of fact were contested and material. The first issue is the scope of these defendants' powers and duties as members of the Board. Jackson alleges that the individual Board members had assumed responsibility over various departments at Parchman in order to relieve Acting Superintendent Hollowell of some of his administrative burden. Jackson asserts the depositions of the Board members demonstrate they participated in promulgating regulations for Parchman and supervised implementation of prison policies. The second issue is whether these defendants performed their duties properly. Specifically, Jackson questions whether these defendants adequately supervised the selection and training of trusty shooters, as was required by the prior injunction order. The third issue Jackson asserts concerns the adequacy of the medical facilities at Parchman.

With respect to defendants Hollowell, Cash, and Jennings, acting and assistant superintendents, Jackson asserts that the extent and fulfillment of their respective responsibilities was a genuine issue of material fact.

All the defendants raise two arguments in response. The first, by innuendo, is that the fact issues relied upon by Jackson are not material. As explained below, we disagree. The second is that Jackson's affidavit opposing the defendants' affidavits submitted with their motion for summary judgment does not comply with Fed.R. Civ.P. 56(e). This argument is not without force.

Jackson's only affidavit opposing summary judgment was a sworn statement by his attorney. Depositions and documents were attached to the affidavit, and the attorney stated that she was familiar with the documents and proceedings in the case. Thus, the affidavit did not show, as Rule 56(e) requires, "that the affiant is competent to testify to the matters stated" in the attachments. In fact, it showed the converse.

■ Summary judgment is not, however, an automatic sanction for non-compliance with Rule 56(e). A movant must establish the propriety of relief by the strengths of his own showing, not by the defects in his opponent's showing. Even accepting the uncontroverted statements in the defendants' affidavits as true, the defendants were not entitled to judgment as a matter of law. Though this is the ground on which we reverse the summary judgment, we do not reject Jackson's claim that there were genuine issues of material fact. The district court may be required to re-evaluate that claim on remand.

The defendants claim qualified immunity for their actions. In this regard, the defendants rely on several decisions of this court and of the United States Supreme Court. Since the issues which Jackson argues were genuine and material pertain to the qualified immunity defense, we review briefly the law in that area.

■ In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), public high school students sued under 42 U.S.C. § 1983 to enforce their due process rights under the federal constitution, which rights had been allegedly denied them when they were expelled from school for violating a rule prohibiting the use or possession of alcoholic beverages at school functions. The Court concluded that the test for immunity must contain a subjective and an objective element. An official is immune if his motives are permissible and he is not violating constitutional rights established by "settled, indisputable law...." *Id.* at 321, 95 S.Ct. at 1000.

*Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), applied *Wood v. Strickland* to a § 1983 suit against prison officials. The prisoner, Navarette, complained that the officials had been interfering with his mail. The interference predated the Court's ruling regarding prison mail in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). The Court held that Navarette's constitutional right of correspondence was not "clearly established" at the time of the alleged interference: "Whether the state of the law is evaluated by reference to the opinions of this Court, of the Courts of Appeals, or of the local District Court, there was no 'clearly established' First and Fourteenth Amendment right with respect to the correspondence of convicted prisoners in 1971–1972." *Procunier v. Navarette*, 434 U.S. at 565, 98 S.Ct. at 861 (footnote omitted). Thus, the Court concluded, there was no basis for rejecting the immunity defense under the objective test of *Wood v. Strickland*.

This court applied *Wood v. Strickland* to a suit against Parchman Penitentiary officials in *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978). The prison officials in *Bogard* were held entitled to official immunity under both federal and state law, for there was insufficient evidence after the trial of that case to create a jury question on whether the officials acted with any intent.

■ In *Douthit v. Jones*, 619 F.2d 527 (5th Cir. 1980), we further explained that qualified immunity is an affirmative defense, the very invocation of which depends upon the range of discretion exercised by the defendants in performance of their official duties. *Id.* at 534. We also expounded the two alternative means by which a plaintiff can overcome the qualified immunity defense. If the plaintiff can show that he had a clearly established constitutional right that the defendants knew or should have known of, and that they knew or should have known that their conduct violated that right, the immunity is overcome. A similar result obtains if the plaintiff can prove the defendant intended to harm him or took an action substantially certain to produce injury. *Id.* at 533, *quoting Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24, 31 (1978); *Cruz v. Beto*, 603 F.2d 1178, 1182 (5th Cir. 1979); *Bogard v. Cook*, 586 F.2d 399, 411 (5th Cir. 1978).

■ The defendants here correctly claim that *Bogard* controls this case. As we said there, "[u]nder the objective test of *Wood*, an official, even if he is acting in the sincere subjective belief that he is doing right, loses his cloak of qualified immunity if his actions contravene 'settled, indisputable law.'" *Id.* at 411. Jackson does not claim that the defendants acted with malicious intent to deprive him of his rights. He asserts that they violated settled law. Jackson does not claim that the failure to eliminate the trusty system was per se unconstitutional. He claims that the prison officials' failure to evaluate trusty shooters was a violation of settled law. The settled law Jackson invokes is the injunction entered by the United States District Court for the Northern District of Mississippi in *Gates v. Collier*, 349 F.Supp. 881 (N.D.Miss.

1972). *Gates* was a class action suit by prisoners at Parchman challenging various conditions and practices at the Penitentiary. The district court in *Gates* found that "Parchman, in certain material respects, has been, and continues to be, maintained and operated in a manner violative of rights secured to inmates by the United States Constitution...." *Id.* at 893. On October 20, 1972, as part of the relief awarded, the district court ordered the immediate commencement of a plan to phase out the trusty system. By June 20, 1973, the use of trusty shooters was to be totally eliminated. Further, the court ordered:

> In the interim period before total elimination of trusty custodial personnel, defendants shall insure, by a careful review of inmate personnel records and psychological tests, that inmates placed in a position of supervision or custody of other inmates are mentally and emotionally fit to perform their assigned tasks.

*Id.* at 903.

Jackson, again referring to deposition statements of various defendants, claims that there is a genuine issue of material fact as to what the defendants did to comply with the specific order to review the records of trusty shooters. Lepolean Reed, the trusty shooter who discharged the gun which wounded Jackson, received two concurrent fifteen-year sentences for armed robbery. He began serving these sentences in February, 1968. In March, 1968, Reed was examined by a psychologist at Parchman. Among the pertinent findings and observations are these:

> Lepolean is presently functioning within the borderline range of intelligence.... The Wechsler Adult Intelligence Scale indicates some retardation, however, there are no major indications of neurological malfunctioning.... He is going to need everything that the prison can offer in terms of vocational training and counseling to correct the deviant behavior pattern that he has developed.

Reed received no further psychological testing or evaluation before the February 6, 1973, shooting incident. Jackson asserts that no one reviewed Reed's file and that if someone had, Reed would have been relieved from trusty shooter duty before he blinded Jackson.

Whether the defendants were entitled to judgment as a matter of law depends on whether the *Gates* decree clearly established Jackson's constitutional rights. If it did not, the defendants' non-compliance, while pertinent to a contempt proceeding, could not violate "clear, indisputable law," and would not pertain to the qualified immunity claimed by the defendants. As mentioned before, the district court in *Gates* found that the defendants there "have subjected the inmate population at Parchman to cruel and unusual punishment ... by assigning custodial responsibility to incompetent and untrained inmates." *Id.* at 894. We hold that the *Gates* order clearly established Jackson's constitutional right to be free from cruel and unusual punishment in the form of trusty shooters who were inadequately screened for mental, emotional, or other problems. We leave to the district court on remand the development of the precise legal perimeters of the defendants' duty under *Gates* as it pertains to Jackson. We hold only that, even accepting the defendants' version of their compliance with *Gates*, the defendants were not entitled to judgment as a matter of law, and summary judgment was inappropriate. Fed.R.Civ.P. 56(c).[1]

▪ Jackson also argues that summary judgment was improper on his claim that the medical facilities at Parchman were inadequate. The *Gates* order required the prison officials to employ a medical staff consisting of at least three full-time physicians, among other personnel. Further, the *Gates* defendants were required to "use their best efforts to comply with the general standards of the American Correctional Association relating to medical services for

---

1. Because of the *Gates* order, our holding in *Roberts v. Williams*, 456 F.2d 819 (5th Cir. 1972), on facts similar to these, is inapposite.

prisoners." *Id.* at 901. Jackson did not claim in this court or in the district court that the *Gates* order clearly articulated his constitutional rights with regard to medical facilities. Neither does he claim that the defendants violated the mandate of *Gates* in this respect. Indeed, the defendants represent that the plan for medical facilities was approved by the district court in the *Gates* proceedings on December 20, 1972. While the adequacy of the facilities to treat Jackson's injury may have been an issue in dispute, that issue is not material. Jackson alleged in his complaint that the defendants had a duty to provide care for his particular type of injury at Parchman or at a nearby hospital. Neither *Gates* nor any other authority required this much. While the defendants must provide adequate care, their failure to have at or near Parchman the particular kind of specialist required to treat Jackson's severe eye wound violated no duty established by settled law. Thus, this issue was not material. Since Jackson alleged neither intentional harm nor contravention of settled law, summary judgment sustaining the defendants' qualified immunity defense on this count was appropriate.

To the extent that the summary judgment disposed of Jackson's asserted cause of action under Mississippi law, we vacate the judgment appealed from. Those issues were not briefed or argued in this court. On remand, the district court should consider these claims anew.

For the reasons stated, the judgment of the district court is reversed in part and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND, IN PART, REVERSED AND REMANDED.