Arthur JACKSON, Plaintiff,

v.

W. I. (Bill) HOLLOWELL, Etc., et. al., Defendants,

Liberty CASH, Clifford Jennings, Charles Riddell, H. L. Roberts, Sr., K. C. Peters, Sr., and John Q. Demoville, Etc., Defendants-Appellants,

v.

GRANITE STATE INSURANCE COMPANY, United States Fidelity and Guaranty Company, Western Surety Company, St. Paul Fire and Marine Insurance Co., and New Hampshire Insurance Co., Defendants-Appellees.

Thomas Perry WERNETH, Plaintiff,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee,

v.

Thomas D. COOK, Defendant-Appellant.

Nos. 80–3901, 80–3902.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1982.

Rehearing Denied Nov. 8, 1982.

T. H. Freeland, III, James L. Robertson, Oxford, Miss., Roy D. Campbell, Jr., Greenville, Miss., for Granite State, et al.

Jerome Steen, Whitman B. Johnson, III, Jackson, Miss., Pascol J. Townsend, Jr., Drew, Miss., for St. Paul Fire & Marine Ins. Co.

Roy D. Campbell, Jr., Greenville, Miss., Champ T. Terney, Indianola, Miss., Pascol J. Townsend, Jr., Drew, Miss., James L. Robertson, Oxford, Miss., Whitman B. Johnson, III, Jackson, Miss., for U. S. Fidelity & Guaranty Co.

Before GOLDBERG, WILLIAMS and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

These consolidated appeals present a state law question concerning the right of a surety company to seek indemnification from a bond principal for legal fees incurred by the surety company in defending a suit on the bond. This issue arises in the context of prisoners' civil rights suits brought against Mississippi state officials and against their surety companies for recovery under public official bonds. We find that the surety companies' right to indemnification depends on whether it was reasonably necessary for the sureties to incur legal costs, on whether the costs incurred were reasonable in amount, and on whether the sureties acted in good faith toward the bond principals.

Bill Allain, Atty. Gen., P. Roger Googe, Jr., Asst. Atty. Gen., Robert L. Gibbs, Spec. Asst. Atty. Gen., Jackson, Miss., P. J. Townsend, Jr., Robert Lawson Holladay, Drew, Miss., for defendants-appellants.

## FACTS AND PROCEEDINGS BELOW

In 1975, Arthur Jackson, a Mississippi State Penitentiary inmate, brought suit against an array of Mississippi state officials,[1] seeking damages for injuries sustained during his incarceration. *Jackson v. W. I. Hollowell, et al.* (No. 80–3901) (herein-

1. Jackson filed suit against the Warden and Associate Wardens of the Penitentiary, W. I. Hollowell, Liberty Cash, Jr., Clifford Jennings; and against Commissioners of the Penitentiary, Charles F. Riddell, H. L. Roberts, Sr., K. C. Peters, Sr., and John Q. DeMoville.

after "*Jackson*").[2] Similarly, Thomas Werneth, another Mississippi State Penitentiary inmate, brought suit against various state officials,[3] seeking damages for personal injuries. *Werneth v. State of Mississippi, et al.* (No. 80–3902) (hereinafter "*Werneth*").[4]

As a requirement of holding office, the defendant officials executed "public official bonds"[5] with the appellee surety companies.[6] The applications for the bonds contained similar provisions in which the state officials agreed to indemnify the surety companies against any loss or expense, including attorneys' fees, which the surety companies might incur by reason of executing the bonds.

After filing suit against the prison officials, plaintiffs Jackson and Werneth filed amended complaints adding the surety companies as defendants by virtue of the sureties' liability on the bonds to anyone injured by the officials' breach of duty.[7] The surety companies in turn filed cross-claims against the defendant prison officials seeking indemnification for any losses which might be sustained by the sureties as a result of the suits.

In both the *Werneth* and *Jackson* actions, the prison officials' defense was undertaken by the Attorney General of the State of Mississippi. Several of the state officials also retained private counsel. After being joined as defendants, the surety companies hired their own attorneys to represent their allegedly separate interests in the litigation.

### 1. *Jackson*

In 1979, the district court granted summary judgment in the *Jackson* case in favor of all defendants.[8] However, the district court retained jurisdiction to adjudicate the surety companies' cross-claims for attorneys' fees against the defendant prison officials.[9] The *Jackson* cross-claims for indemnification went to trial before a jury, which found in favor of the cross-defendant prison officials. The trial judge then overturned the jury verdict and granted the surety companies' motion for judgment n.o.v. The court held that the surety companies had an

2. Plaintiff Jackson brought suit under 42 U.S.C. § 1983 in the U.S. District Court for the Northern District of Mississippi.

3. Thomas D. Cook, former superintendent of the Penitentiary, was named as defendant along with several other officials no longer involved in this action.

4. The *Werneth* case was also brought under 42 U.S.C. § 1983 in the Northern District of Mississippi.

5. "An official bond is an instrument ... by which a public officer undertakes to pay a sum of money if he does not faithfully discharge his office, or by which a surety undertakes that, if the officer does not do so, the surety will be liable ..." 67 Corpus Juris Secondum § 46. Under Mississippi law, each member of the State Penitentiary Board is required to execute a public official bond. Miss.Code § 47–5–13 (1972). Public official bonds are made payable to the State of Mississippi, for the use and benefit of any person injured by an officials' breach of duty. Section 25–1–17.

6. *Werneth* appellant Thomas Cook executed a public official bond with appellee United States Fidelity & Guaranty Co. in the amount of $50,000. *Jackson* appellant Charles Riddell executed a bond in the amount of $50,000 with the Granite State Insurance Company. *Jackson*

appellant K. C. Peters, Sr. executed a $10,000 bond with St. Paul Fire & Marine Insurance Co. *Jackson* appellants H. L. Roberts, Sr. and J. Q. DeMoville each executed a bond in the amount of $10,000 with United States Fidelity & Guaranty Co. *Jackson* appellants Liberty Cash, Jr. and Clifford Jennings executed $10,000 bonds with the New Hampshire Insurance Company.

7. *See* Miss.Code Ann. § 25–1–17, *supra.*

8. Plaintiff Jackson appealed the dismissal of his damage claims to this Court, based on the district court's Supplemental Order finding no reason to delay entering judgment as to plaintiff's claims. *See* Fed.R.Civ.P., Rule 54(b). The trial court's order granting summary judgment in favor of defendants was reversed, and the case was remanded for a trial on the merits. *Jackson v. State of Mississippi*, 644 F.2d 1142 (5th Cir. 1981). The trial was held in March, 1982. Judgment was entered in favor of plaintiff Jackson for $50,000 in damages. That verdict is presently pending on appeal before this Court. *Jackson v. State of Mississippi, et al.* (No. 82–4138).

9. The surety companies sought attorneys' fees ranging from $801.93 to $3,060.10 against the individual *Jackson* prison officials.

absolute right under the bond application agreements to employ counsel of their own choosing to defend the companies in any action brought against them on the bonds and to charge the bond principals with the costs of retaining separate counsel. In the alternative, the court found that there was no substantial evidence to support the jury's finding that it was not reasonably necessary for the surety companies to retain their own attorneys to defend the suit.

## 2. *Werneth*

In 1979, Thomas Werneth died. The district court granted plaintiffs' attorneys' motion to dismiss on the grounds that the plaintiff was deceased. However, the district court retained its jurisdiction over the cross-claim of United States Fidelity & Guaranty Co. (hereinafter "USF&G") against cross-defendant Thomas Cook for attorneys' fees incurred by the surety company in defending the *Werneth* suit.[10] Based on its disposition of the *Jackson* cross-claim, the trial court granted summary judgment in favor of cross-claimant USF&G. The court reiterated its holding that the surety company had an absolute right to retain its own attorney, and to charge cross-defendant Cook with the attorneys' fees. The court further found that since the parties had stipulated that the fees claimed by USF&G were reasonable in amount, there was no issue for the jury to decide.

---

**10.** USF&G claimed $2,469.86 in attorneys' fees.

**11.** This clause was contained in the printed form bond applications used by the New Hampshire Insurance Co. and the Granite State Insurance Co. The form used by St. Paul Fire and Marine Insurance Co. contained a similar clause, under which the bond principal agreed

> to indemnify the [Surety] Company against all loss, liability, costs, damages, attorneys' fees, and expenses whatever which the Company may sustain or incur by reason of executing said bond [or] . . . in prosecuting or defending any action which may be brought in connection therewith . . .

The indemnification provision contained in the bond application form used by USF&G states that the bond principal agrees

## 3. *Jackson and Werneth*

The defendant prison officials in both the *Jackson* and *Werneth* cases brought these appeals, arguing that the district court erred in entering judgment in favor of the surety companies on the cross-claims. Because of the similarity in legal issues presented, this Court consolidated the cases for appeal.

## INDEMNIFICATION

■ The surety companies' claims for indemnification are based on agreements signed by the defendant state officials as part of their applications for public official bonds. Under the terms of the applications, the prison officials, as bond principals, agreed to:

> indemnify and keep indemnified, the [surety] company from and against any and all liability, loss, costs, charges, suits, damages, counsel and attorneys' fees and expenses of whatever kind or nature, which it shall or may, for any cause, at any time sustain or incur, or be put to, for or by any reason or in consequence of having entered into or executed said bond(s) . . .[11]

The surety companies argue that the language of the indemnity agreements vests in the Sureties the absolute right to employ counsel of their own choosing and to charge the costs to the bond principals. The prison officials argue that a surety's right to recover attorneys' fees depends on whether it was reasonably necessary for the surety

> to indemnify the [surety] company against any loss, damage or expense of any kind incurred by it by reason of the execution of . . . [the] bond.

Appellants argue that because the indemnity agreement used by USF&G does not expressly include attorneys' fees, recovery for attorneys' fees should not be allowed. We disagree. USF&G's bond agreement has been construed to include attorneys' fees. *See USF&G v. Love*, 260 Ark. 374, 538 S.W.2d 558, 559 (1976); 11 Appleman, Insurance Law and Practice § 6677 (1981). The scope of the language—"any loss, damage or expense of any kind"—is clearly broad enough to bring within its ambit the expenses of hiring an attorney.

company to retain separate counsel and on whether the surety acted in good faith toward the bond principal.

In resolving this dispute over the contract provisions, the trial court properly looked to Mississippi law.[12] There being no case directly on point, the court sought guidance in *dicta* found in the Mississippi Supreme Court's opinion in *National Surety Corporation v. Vandevender*, 235 Miss. 277, 108 So.2d 860 (1959). In *Vandevender, supra,* Mississippi's highest court considered · a surety company's claim against a bond principal for attorneys' fees incurred by the surety company in defending a suit on the bond, and concluded that because the bond principal had retained his own counsel in reliance on a request by the surety company to do so, the surety company was estopped from claiming reimbursement for fees. Discussion of the estoppel issue is prefaced by this statement:

> We assume that, except for the question of estoppel, hereinafter discussed, appellant [Surety] was entitled to reimbursement from appellee [bond principal] of all reasonable sums paid out by it in good faith in defending the Nichols suit, including fees for attorneys of appellant's choice.

*National Surety Company v. Vandevender,* 108 So.2d at 862. From this language, the district court concluded that the *Werneth* and *Jackson* surety companies had an absolute right to employ counsel of their own choosing, and to charge the costs of such counsel to the bond principals.

We read *Vandevender* differently. Rather than implying the existence of an absolute right to incur attorneys' fees, we believe that the language in *Vandevender* refers to the well-established doctrine that a surety is entitled to reimbursement for reasonable *and necessary* expenses incurred by the surety in *good faith* in defending itself against a suit on a bond.

The rule that a surety is entitled to be reimbursed only for necessary expenses is no new-comer to Mississippi jurisprudence. In 1866, the Supreme Court of that state observed that, with regard to litigation pursued by a surety on his principal's behalf, "It is well settled, and on sound reason, that a surety cannot charge his principal with costs and expenses *unnecessarily* incurred . . ." *Whitworth v. Tilman,* 40 Miss. 76, 81 (1866) (emphasis in original).[13] Nor is the "necessity rule" unique to Mississippi. In *Kilgore v. Union Indemnity Co.,* 222 Ala. 375, · 132 So. 901 (Ala.1931), the Alabama Supreme Court was called upon to construe an indemnity agreement contained in a public official bond in the context of a suit by the surety to recover attorneys' fees from the principal. The court stated,

> In construing indemnity covenants . . . it is everywhere recognized that the indemnitee must act in good faith. He cannot needlessly, in utter disregard of the burdens he is imposing on his indemnitor, incur attorneys' fees, and in no case such as are excessive and unreasonable in amount.

*Kilgore v. Union Indemnity Co.,* 132 So. at 902.[14]

In a more recent case, *USF&G v. Love,* 260 Ark. 374, 538 S.W.2d 558 (1976), the

---

12. The surety companies' state law claims for indemnity under the bond agreements are ancillary to the *Werneth* and *Jackson* plaintiffs' federal civil rights actions against the prison officials.

13. In *Whitworth, supra,* the Court found that, as a means of proving good faith, the surety should notify his principal as to the pendency of any litigation in order to give the principal an opportunity to pursue his own course of action in regard to the claim.

14. In *Kilgore,* the Court held that when the bond principal retained his own counsel to defend the suit, notified the surety of this fact,

and requested that the surety company avoid the expense of employing its own counsel, the surety's right to retain separate counsel depended on all of the facts of the case, including the surety company's need for legal representation and advice. *Kilgore v. Union Indemnity Co., supra. See also American Surety Co. v. Vinsonhaler,* 92 Neb. 1, 137 N.W. 848, 850 (1912) (where the bond principal furnished the surety sufficient funds to indemnify it against any claim, and the principal retained its own attorneys to defend the action, separate legal expenses incurred by the surety were "unnecessary and wanton").

indemnity question arose in the context of a civil rights suit brought against a sheriff and his surety company on the sheriff's public official bond. The surety company employed its own counsel to defend the suit, and sued the sheriff for reimbursement of attorneys' fees. The court stated, "To be recoverable by the indemnitee, the attorneys' fees must be reasonable, proper, necessary and incurred in good faith and with due diligence." *USF&G v. Love*, 538 S.W.2d at 559. Similarly, in *Central Towers Apartments, Inc. v. Martin*, 61 Tenn. App. 244, 453 S.W.2d 789 (1970) the court held,

> When the principal and his indemnified surety are sued by the obligee under the surety's bond, and the surety exercises its right under the indemnity agreement of the principal to hire its own separate counsel and incur litigation expense in defense of the action, the liability of the principal for the attorney fees and expenses thus incurred by the surety depends upon whether, under all the facts of the case, it was *reasonably necessary* for the surety to so act in its own defense, and whether the surety acted in *good faith* toward the principal.

*Id.*, 453 S.W.2d at 800 (emphasis added).

■ In sum, an indemnity agreement is not a blank check; it does not entitle the surety company to reimbursement for legal expenses which are unreasonable or unnecessary. To hold otherwise would allow bonding companies to retain counsel and to charge attorneys' fees against the indemnitor even when the surety company does not require a separate legal defense to protect its interests. The indemnity contract cannot reasonably be construed as requiring

the indemnitee to bear the cost of such redundant representation. Thus, the weight of authority allows reimbursement for legal costs under the terms of an indemnity contract only if it is necessary for the surety to retain separate counsel, if the amount of the fees claimed is reasonable, and if the surety has acted in good faith toward the bond principal.

■ Whether it was necessary for a surety company to retain separate counsel, and whether the surety has acted in good faith, are questions of fact. *USF&G v. Love*, *supra*, 538 S.W.2d at 559; *Central Towers Apartments, Inc. v. Martin*, *supra*, 453 S.W.2d at 800; *Kilgore v. Union Indemnity Co.*, *supra*, 132 So. at 902. The surety company's good faith, and the reasonable necessity of incurring the legal costs sought to be reimbursed, are determined by looking at all of the facts of the case. It is appropriate to consider, among other factors, whether there is a conflict of interest between the surety and the bond principal, *see Central Towers Apartments, Inc. v. Martin*, *supra*; whether the surety company has requested that the bond principal undertake to defend the suit, *see National Surety Company v. Vandevender*, *supra*; whether the bond principal has retained competent counsel and requested that the surety not incur separate legal costs, *Kilgore v. Union Indemnity*, *supra*; and whether the bond principal can furnish sufficient funds to indemnify the surety against the claim asserted, *see American Surety Co. v. Vinsonhaler*, *supra*.[15]

■ Because the issue of reasonable necessity and good faith is one of fact, it

---

**15.** In considering factors bearing on reasonable necessity and good faith, the Court in *Central Towers Apartments, Inc. v. Martin, supra* took into account,

> the amount of risk to which the surety was exposed; whether the principal was solvent; whether the surety has called on the principal to deposit with it funds to cover the potential liability; whether the principal on demand by the surety to deposit with it the amount of the claim has refused to do so; whether the principal was notified of the action and given opportunity to defend for itself

and the surety; whether the principal hired the attorney for both himself and the surety; whether the principal notified the surety of the hiring of the attorney; the competency of the attorney hired by the principal; the diligence displayed by the principal and his attorney in the defense; whether there is a conflict of interest between the parties; the attitude and cooperativeness of the surety; and the amount charged and diligence of the attorney hired by the surety.
> *Id.*

follows that the district court erred in granting summary judgment in favor of USF&G in the *Werneth* case. The question of whether it was necessary for USF&G to retain separate counsel and whether USF&G acted in good faith, can only be resolved by examining all of the facts and circumstances of the case.[16] Accordingly, the district court's order granting summary judgment in favor of USF&G in the *Werneth* case must be reversed.

The status of the *Jackson* case is more complicated. In *Jackson*, the surety companies' cross-claims against the state prison officials for indemnification were tried to a jury. The jury found in favor of the state officials. In response to special interrogatories, the jury found that it was not reasonably necessary for the surety companies to incur attorneys' fees and legal expenses in defending the *Jackson* suit, and that the attorneys' fees claimed by each surety company were not reasonable in amount.

The district court granted judgment n.o.v. in favor of the surety companies. If the court had granted judgment n.o.v. solely on the grounds that the surety companies had an absolute right to indemnification for the costs of retaining separate counsel, the order of judgment would have to be reversed. However, the entry of judgment n.o.v. in favor of the sureties was also based on the district court's determination that there was no substantial evidence to support the jury's verdict. According to the district court, the evidence submitted to the jury on the issue of whether it was reasonably necessary for the sureties to engage their own attorneys, and on the issue of whether the fees charged were reasonable in amount, was "so overwhelmingly in favor of the bonding companies, that no reasonable juror could reach a contrary result."

This Court employs the standards set forth in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), to review a district court's grant or denial of judgment

n.o.v. *Maxey v. Freightliner Corp.*, 665 F.2d 1367, 1371 (5th Cir. 1982) (en banc).

Under the standard established in *Boeing*, a motion for directed verdict or for judgment n.o.v. should be granted only when the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict. The court should consider all of the evidence—not just that evidence which supports the nonmovant's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied . . .

*Maxey v. Freightliner Corp., supra.*

▉ After reviewing the record, we conclude that judgment n.o.v. in favor of the surety companies was appropriate. The issue at trial was whether it was reasonably necessary for the surety companies to employ separate counsel to protect their interests, and whether the sureties acted in good faith toward the bond principals. While there was no evidence of an actual conflict of interest between the sureties and bond principals, the evidence did show that the interests of the parties were less than completely congruent.

As the sureties were aware, the state prison officials were represented in the *Jackson* suit by the State Attorney General. There is no evidence that representatives of the sureties believed that the Attorney General would be unable to competently defend the officials on the damage claims. However, the trial exhibits include letters from the Attorney General's Office stating that although the Attorney General would provide a full defense for the state officials, it

---

**16.** The district court found that the *Werneth* parties stipulated that the attorneys' fees claimed by USF&G were reasonable in amount. This stipulation resolves only one aspect of the parties' dispute. It remains to be determined whether USF&G had any right to incur separate legal costs in the first instance. The latter question can be answered only by reference to the facts.

would not be able to raise any defenses specific to the surety companies.[17] The evidence shows clearly the existence of at least one defense, relating to the surety companies' aggregate liability, which was unique to the sureties.[18] Mr. McNamara, counsel for St. Paul Fire and Marine, testified that he asserted the surety company's "aggregate liability" theory as a defense in the separate answer filed by him on behalf of the company. Mr. Googe, the lawyer in the Attorney General's Office, testified on cross-examination that the bond principals had no direct interest in asserting the surety companies' "aggregate liability" defense.[19] In addition, Mr. Googe testified that he was aware of the multiple damage suits threatening the sureties, and that in his opinion, it was desirable that the surety companies plead "aggregate liability" as a defense.[20]

■ Thus, there was uncontradicted evidence that in order to fully protect their interests, the surety companies were required to plead as a defense the limitation on their aggregate liability. This defense was specific to the sureties; the bond principals had no interest in asserting it, and the Attorney General had stated clearly at the onset of the litigation that his office could not assert any defenses specific to the surety companies.[21] Thus, there was overwhelming proof that it was at least *reasonably* necessary for the sureties to retain separate counsel in order to protect their separate interests.[22]

17. The letters were addressed to the bond principals, with copies sent to the sureties' attorneys. They stated, in relevant part,

It is advised that we will raise every defense possible as far as you and the other defendants are concerned. However, it is not felt that this office can raise any defense which would be unique to the [surety] company or move that this company be dismissed from this lawsuit. The failure to raise such defenses or raise such motions will in no way affect your defenses to the suit.

18. According to the trial record, the surety companies and the Attorney General's Office were aware that while the *Jackson* suit was pending, at least one other prisoner had brought a damage action against the same state prison officials on the same public official bonds. The plaintiffs apparently contended that they were entitled to recover the full amount of each bond for each individual injury sustained. The attorney retained by the surety companies pled as an affirmative defense that the aggregate liability of the surety companies in all of the damage actions should not exceed the face amount of each official's bond.

19. The trial transcript contains the following exchange:

Q I am asking you whether or not the individual defendants would have any interest in raising and pursuing as a defense for each of the surety companies that in no event could their liability exceed the penalty of the bond.
A That is correct.
Q How would the individuals have any interest in raising that issue?
A They wouldn't.

20. The trial transcript contains this exchange:

Q ... You are aware, are you not, that with respect to the suits that have been brought against bonding companies, the plaintiffs have always taken the position with respect to these bonds that this limitation, that is $10,000 per bond, is a per occurrence limitation, that is, that each plaintiff would be entitled to recover up to $10,000 every time this bonding company was sued?
A That is correct. And the bonding company has taken a position that it was just one $10,000?
Q Right. The bonding companies have taken the position that no matter how many claims are asserted, their aggregate liability was no more than $10,000?
A That is correct.
Q All right. State whether or not in your opinion it was desirable that an answer or some pleading be filed on behalf of the bonding companies asserting this defense?
A Yes.

21. Mr. Googe testified that in his opinion, the Attorney General could have raised on behalf of the sureties their defense relating to aggregate liability. However, Mr. Googe's opinion appears to conflict with the position set forth in the Attorney General's letter concerning representation of the bond principals, as opposed to the sureties. *See* note 1, *supra*.

22. The state prison officials each attempted to testify that they were financially able to indemnify the surety companies for the face amount of their bonds. On the facts of this case, the evidence was properly excluded as irrelevant. The record shows that plaintiff Jackson sued each defendant prison official for $250,000 in actual damages and $250,000 in exemplary damages. Thus, the officials' ability to indem-

The trial exhibits included copies of the itemized bills for legal services prepared by the sureties' attorneys. The nature of the services performed, and hourly rate charged, were described. Each attorney testified that the amounts charged were reasonable in comparison with the fees of other attorneys in the community. The prison officials introduced no evidence to contradict this testimony.

Finally, the attorneys retained by the surety companies each testified that throughout the *Jackson* litigation, the attorneys attempted as far as possible to avoid duplicating the legal work performed by the Attorney General's Office. There was no credible evidence to contradict the attorneys' testimony that they had at least *attempted* to minimize the expenses incurred to defend the sureties' interests in the litigation. That the sureties' acted in good faith toward their bond principals cannot reasonably be questioned.

In sum, the uncontradicted evidence showed that it was necessary for the sureties to retain counsel to protect their separate interests, that the fees charged were reasonable, and that the sureties acted in good faith toward the bond principals. A fairminded jury with a reasonable understanding of the issues could not have reached another result. Therefore, the district court's entry of judgment n.o.v. in favor of the cross-claiming surety companies for the amounts claimed was proper, and should be affirmed.

## CONCLUSION

The order of the district court granting summary judgment in favor of the cross-claimant in *Werneth* is reversed, and the case is remanded for a trial on the merits. The district court's order granting judgment n.o.v. in favor of the cross-claimants in *Jackson* is affirmed.

*Werneth v. Cook*, No. 80–3902, is REVERSED and REMANDED.

*Jackson v. Hollowell*, No. 80–3901, is AFFIRMED.

GARWOOD, Circuit Judge, concurring.

I concur in all the majority opinion. I append these remarks merely to address certain aspects of the "reasonable and necessary" requirement not expressly explored by the majority.

I construe "necessary" in this context as more nearly denoting "appropriate" than "absolutely indispensable." *See, e.g., McCulloch v. Maryland*, 4 Wheat 316, 413–18, 4 L.Ed. 579, 603–04 (1819). Further, I would hold that, except in the most extraordinary circumstances or where actual bad faith is involved, it is, *as a matter of law*, reasonable and necessary for any party formally made a defendant in almost any lawsuit to at least initially retain counsel of its own selection, having primary loyalty to it, as opposed to relying *exclusively* on counsel to be retained by a co-defendant or potential indemnitor. Litigation has simply too many deadlines, "deemed" notices and waivers, potential surprises and unexpected developments to warrant any substantial second-guessing of the decision to hire separate counsel by one formally hailed into court as a party defendant.

Accordingly, where the bonding company itself has been formally made a party defendant in a suit on the bond, and the principal has expressly agreed to indemnify the bonding company for "all ... attorneys' fees ... in ... defending any action which may be brought in connection" with the bond or the equivalent, it would have to be a most unusual case before the bonding company's good faith retention of its own separate counsel could legitimately be found so unnecessary and unreasonable as to justify denying the bonding company recovery for *any* of its counsel's fees.

The substantial question in cases of this kind, it seems to me, is not the bonding company's retention of its own separate counsel, but rather whether it was reasonable and necessary that *everything* done by

---

nify the sureties for amounts ranging from $10,000 to $50,000 (the face amount of the bonds) was irrelevant on the issue of the sure-

ties' risk; the issue was the officials' ability to satisfy a judgment in the amount of one-half million dollars.

such counsel have been performed by the bonding company's separate counsel, as opposed to having been performed by the principal's counsel for both the principal and the bonding company. In other words, the real issue is not whether the bonding company should have *any* services by separate counsel, but rather the *nature* and *extent* of services which it is reasonable and necessary that the bonding company call on its separate counsel for, in light of the fact that the principal's counsel is available to carry "the laboring oar" for both.

In the *Werneth* case the stipulation went only to the reasonableness of the fee for the services rendered. There was no stipulation that it was reasonable and necessary for *all* of such services to be performed by the bonding company's separate counsel. Accordingly, because this issue remained open, summary judgment was inappropriate. In the *Jackson* suit, the judgment *non obstante veredicto* was proper because the evidence established beyond legitimate dispute that *all* the separate counsel's services, and related fees, were reasonable and necessary.