551 So.2d 204 (1989)
Joyce PERKINS, et al.
v.
Lizzie Lee THOMPSON, et al.
No. 58856.
Supreme Court of Mississippi.
August 9, 1989.
Rehearing Denied September 20, 1989.
*205 Ceola James, Vicksburg, for appellants.
Calvin L. Wells, Frank T. Moore, Jr., Wells, Moore, Simmons, Stubblefield & Neeld, Jackson, C. Ashley Atkinson, William Timothy Jones, Bert H. Jones, McComb, for appellees.
Before HAWKINS, P.J., and PRATHER and ANDERSON, JJ.
PRATHER, Justice, for the Court:
The Chancery Court of Warren County dismissed the claim of heirship by an out-of-wedlock child as being filed outside the period of statute of limitations of Miss. Code Ann. § 91-1-15(3)(c) (Supp. 1988). Joyce Perkins, appellant, appeals this adverse ruling, claiming that her petition to administer her father's estate as his child and only heir at law was timely filed.

I.
Robert Taylor, a resident of Vicksburg, Warren County, died intestate on August 1, 1985. His wife, Arutha had died in 1961. No children resulted from this marriage, but Taylor was survived by two aunts, Lizzie Lee Thompson and Thelma Lee Newton and one uncle, Booker T. Lee, appellees herein. Joyce Perkins claimed to be the out-of-wedlock daughter of Robert Taylor. Perkins' birth certificate, however, showed her mother and father to be Louise and Ben Perkins, who were married. Joyce's date of birth was August 31, 1952. Louise Perkins filed for divorce from Ben Perkins in 1977 alleging that only one child, Ben Perkins, Jr., was born of their marriage; Joyce Perkins was not named as a child in the divorce proceeding.
Joyce Perkins contended that she was throughout her life recognized by Robert Taylor as his daughter. She exhibited correspondence from him signed as "Dad," a joint savings account in their names verified by bank records, a car as a graduation gift from college, and many other memorabilia from grade school and throughout her life. She testified that she visited and actually resided with various members of Robert Taylor's family. Additionally, Ben Perkins denied living with his wife, Louise, for the year preceding Joyce's birth and *206 denied being Joyce's father. Louise Perkins admitted that Robert Taylor was the biological father of Joyce and that Joyce was conceived at a time when she was not living with Ben Perkins.
On the other hand, the aunts and uncle of Robert Taylor denied any acknowledgement by Robert Taylor to them of Joyce's paternity. Rather, they testified that Joyce was introduced as the "godchild" of Robert Taylor's mother, with whom Joyce resided for a period of time. Additionally, throughout her life, Joyce Perkins represented on her school records, social security records, passport, etc. that Ben Perkins was her father.
At the death of Robert Taylor, Joyce Perkins was present and took charge of the funeral arrangements with the knowledge of the other family members. The obituary notice and the funeral program listed Joyce Perkins as the daughter of Robert Taylor. The other family members were in attendance for the funeral and knew of this representation.
After Taylor's death, Joyce Perkins filed a petition to be named the administratrix of Taylor's estate, also claiming that she was his illegitimate daughter and sole heir. This petition and decree appointing her as administratrix of the estate was filed on August 6, 1985. As part of the requirements for her to be named administratrix of the estate, Ms. Perkins posted a bond underwritten by Western Surety Company in the amount of $200,000. Publication of notice to creditors began running in the Vicksburg Evening Post on August 23, 1985, continuing at weekly intervals through September 13, 1985.
Taylor's estate consisted of approximately $186,000.00 in personal property ($157,070.00 of which was cash in a safe deposit box) and real estate valued by appraisal at $104,100.00 as the first accounting filed February 11, 1986. The bulk of the real estate consisted of seven low income rental properties in poor condition, in some of which the decedent had only an undivided interest. Joyce Perkins, a resident of North Carolina, took possession of the real property and with the help of her mother, Louise Perkins, rented it and made repairs, commingling the income with the cash assets of the estate.
On or about August 9, 1985, the appellees, the aunts and uncle of Taylor, retained an attorney to represent them in the Taylor estate. The first attorney testified that he advised his clients that the estate was opened, but that he did not consider any adversary position to have been taken by Joyce Perkins since his clients had received no legal notice. The attorney initiated no action. Various proofs of heirship were filed in the estate by Joyce Perkins on December 12, 1985. On March 14, 1986, in an ex parte proceeding a decree naming Joyce Perkins the sole heir-at-law of Robert Taylor was entered, but the estate remained open pending receipt of closing letters from the Internal Revenue Service.
Sometime in July, 1986, Lizzie Lee Thompson, Booker T. Lee and Thelma Lee Newton, the aunts and uncle of Robert Taylor and the appellees herein, contacted a second attorney about representing them after it appeared that their prior counsel had done little or nothing on the case. On or about August 6, 1986, the appellees contacted their third counsel for representation. On August 29, 1986, the appellees filed a motion to intervene and stay proceedings in the Chancery Court of Warren County. On September 10, 1986, the chancery court issued two orders, one rescinding the order dated March 14, 1986, declaring Joyce Perkins the only heir-at-law, and the second granting to the appellees the right to intervene in the estate and to file a complaint.
On August 31, 1987 through September 4, 1987, the Chancery Court of Warren County heard testimony from approximately nineteen witnesses concerning the relationship between Robert Taylor and Joyce Perkins, i.e., whether Joyce Perkins was the illegitimate daughter of Robert Taylor. After hearing all the testimony presented, the chancery court issued an order which did not reach the actual question of whether Joyce Perkins was Robert Taylor's illegitimate daughter. Instead, the court ruled in favor of the appellees because it *207 found that Joyce Perkins had not complied with the statutory scheme for the determination of descent among illegitimates. The trial court held that the appellant's claim was time barred for failure to comply with the provisions of § 91-1-15(3)(c) Miss. Code Ann. (Supp. 1988).
During trial, the attorney for Western Surety Company took an active role in assisting the attorneys for Joyce Perkins. The surety company was not made a party by either litigant. Following the trial, Western Surety Company was allowed by the court to file a cross-claim against Joyce Perkins for reimbursement as her surety for all reasonable and necessary attorney's fees and expenses which had been incurred by Western Surety Company in the defense of its interest and the interest of the principal (Ms. Perkins) at trial. Testimony was presented by several witnesses as to the reasonableness of the attorney's fees assessed against Ms. Perkins at trial. The reasonableness of the fees was not challenged by Perkins' attorney. Following this testimony, the chancellor awarded Western Surety Company a judgment against Joyce Perkins for total attorney's fees and expenses of $39,155.65.
Joyce Perkins filed this appeal asserting numerous assignments of error. However, only two of these assignments will be addressed in this opinion:
(1) Was Joyce Perkins time barred from establishing her heirship claim by § 91-1-15, § 91-1-27, and § 91-1-29 Miss. Code Ann. (Supp. 1988); and
(2) If the first assignment is answered in the affirmative, was Joyce Perkins properly assessed with attorney's fees and expenses in favor of Western Surety Company?

II.
Joyce Perkins claims to be the out-of-wedlock daughter of Robert Taylor. This claim of paternity could have been established during the lifetime of the father under the Uniform Law of Paternity, § 93-9-1 et seq. Miss. Code Ann. (Supp. 1988). These proceedings may be initiated by the child or any public authority chargeable by law with the support of the child, or, if instituted within one year of the child's birth, by the mother prior to July 1, 1989. (See § 93-9-9). By Session Laws, 1989, HB 523, Chap. 438, effective July 1, 1989, paternity proceedings on behalf of a child shall not be instituted after the child has reached eighteen (18) years of age.
Yet another way to legitimate offspring may be followed under the adoption statute, § 93-17-1 Miss. Code Ann. (Supp. 1988) under which procedure the Chancery Court is authorized to make legitimate any living child of the petitioner not born in wedlock and to decree the offspring an heir of the petitioner. In the case at bar there was no paternity action, no adoption action, and no legitimation proceeding prior to the death of Robert Taylor.
Paternity hearings are very similar to heirship hearings in that the same ultimate fact has to be determined. The case before us is an heirship proceeding. Heirship proceedings are usually heard within the administration of estates, but this is not an absolute requirement. Estate of Smiley, 530 So.2d 18, 24-25 (Miss. 1988). Statutory procedures governing heirship hearings are found at Miss. Code Ann. § 91-1-27 and § 91-1-29 (1972), which are as follows:
§ 91-1-27. How title to property acquired by descent may be made.
In all cases in which persons have died, or may hereafter die, wholly or partially intestate, having property, real or personal, any heir at law of such deceased person, or any one interested in any of the property as to which he shall have died intestate, may petition the chancery court of the county in which said deceased had his mansion house or principal place or residence, or in which any part of his real estate may be situated, in case he was a nonresident, setting forth the fact that said person died wholly or partially intestate, possessed of real or personal property in the State of Mississippi, the names of the heirs at law or next of kin, and praying that the person named in said petition be recognized and decreed to be the heir at law of said deceased.

*208 § 91-1-29. Heirs to be cited to appear.
All the heirs at law and next of kin of said deceased who are not made parties complainant to the suit or petition, shall be cited to appear and answer the same. And in addition thereto a summons by publication shall be made addressed to "the heirs at law of ____ deceased," and shall be published as other publications to absent or unknown defendants, and the cause shall be proceeded with as other causes in chancery, and upon satisfactory evidence as to death of said person and as to the fact that the parties to said suit are his sole heirs at law, the court shall enter a decree that the persons so described be recognized as the heirs at law of such a decedent, and as such be placed in possession of his estate. And said decree shall be evidence in all the courts of law and equity in this state that the persons therein named are the sole heirs at law of the person therein described as their ancestor.
In 1981 the legislature provided a statutory means by which an illegitimate could establish heirship after the death of the decedent. Section 91-1-15 of Miss. Code Ann. (Supp. 1988). The relevant portions of this statute read as follows:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
(c) there has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period shall run notwithstanding the minority of a child.
As noted earlier, Robert Taylor died on August 1, 1985. In Joyce Perkins' petition of August 6 to be appointed administratrix of Taylor's estate, she claimed to be the only heir, but no process was issued to the intervenors, only the ninety (90) day notice to creditors. Perkins contends that she is one of a class and that no notice was required to anyone else. The chancellor ruled that it was the administratrix's duty to give notice within ninety (90) days of August 6 to those persons who would inherit from Taylor if her claim failed in order to comply with Miss. Code Ann. § 91-1-15.
The chancellor erred in this holding. Miss. Code Ann. § 91-1-15(3)(c) requires that "an action seeking adjudication of paternity is filed" within ... ninety (90) days after the first publication of notice to creditors. There is no requirement that notice be given within the ninety (90) days period. Perkins complied with the filing requirement by petitioning to be appointed administratrix and seeking to be declared the sole and only heir-at-law. The intervenors had actual knowledge of Perkins' claim of heirship as evidenced by their hiring of an attorney. Before the estate was closed, the intervenors were properly allowed by the court to file their claim. The summons by publication requirement of § 91-1-29 was made, and all parties were given their day in court. This Court holds that this procedure sufficiently complied with the notice requirements of §§ 91-1-27, 91-1-29, and the filing requirements of § 91-1-15(3)(c). Estate of Smiley, 530 So.2d 18 (Miss. 1988). As in Smiley, supra, there is no procedural default.
This Court holds that Joyce Perkins did comply with the limitation of action period specified under § 91-1-15(3)(c) (Supp. 1988) as well as the requirements of M.R.C.P. 8(a)(1) and 8(e)(1) and 8(f), and that the chancellor was in error in applying a bar of her claim on procedural grounds. The chancellor's ruling concerning the non-compliance with this statute is overruled. The case is remanded for a finding of fact of *209 the biological parentage of Joyce Perkins on the record previously made in this case.

III.

DID THE TRIAL COURT ERR IN FINDING THE APPELLANT LIABLE FOR ATTORNEY'S FEES ACCUMULATED ON BEHALF OF THE APPELLEE WESTERN SURETY COMPANY?
As part of the requirements for her appointment as administratrix of the Robert Taylor estate, Joyce Perkins was required to enter into a bond in the amount of two hundred thousand dollars ($200,000) pursuant to a decree issued by the Chancery Court of Warren County. The surety on this bond was the Western Surety Company. As part of this agreement, the appellant agreed to the following provision contained in the application for bond:
To completely indemnify the company from and against any liability, loss, cost, attorney's fees and expenses whatsoever which the company shall at any time sustain as surety or by reason of having been surety on this bond or any other bond issued for applicant, or for the enforcement of this agreement.
Following the trial, Western Surety Company filed a cross-claim against Joyce Perkins for reimbursement of all attorney's fees and expenses. The hearing on the cross-claim was held on October 23, 1987, concerning the active participation of Western Surety's counsel in defending its own interests and the interests of Joyce Perkins, the basis upon which the attorney's fees were charged, and the reasonableness of the fees charged when compared with the fees charged by other attorneys in the area with comparable experience, without challenge. Following this testimony, the trial judge awarded $39,155.65 in attorney's fees against Joyce Perkins in favor of Western Surety.
Pursuant to the terms of the above-noted agreement, Joyce Perkins agreed to indemnify Western Surety Company and pay any reasonable and necessary attorney's fees. This Court has approved the practice of providing for attorney's fees in such a manner, provided there is sufficient proof presented concerning the reasonableness and necessity of such fees. Key Constructors, Inc. v. H & M Gas Co., 537 So.2d 1318, 1324-1325 (Miss. 1989); Sanford v. Jackson Mall Shopping Center Co., 516 So.2d 227, 230 (Miss. 1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1354 (Miss. 1987).
When the Chancery Court permitted the intervention of Lizzie Thompson, et al, and rescinded the order finding Joyce Perkins to be the sole heir, the chancellor ordered Joyce Perkins to return and tender into the Court's registry one hundred sixty-eight thousand dollars ($168,000.00) pending further orders of the Court. The chancellor then required that the intervenors make Western Surety a party defendant "because of their exposure" under their surety bond. Thus Western Surety employed counsel of its own choosing to represent it and is seeking to charge the attorneys' fees for its separate counsel to the bond principal, Joyce Perkins. It is proper that Western Surety was permitted to employ its own attorney, and the company was also entitled to reimbursement for reasonable and necessary expenses incurred in good faith in defending itself against a suit or a bond. National Surety Corp. v. Vandevender, 235 Miss. 277, 108 So.2d 860 (1959). Every contract, including bond indemnity contracts, has implied covenants of good faith and fair dealing. UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, 525 So.2d 746, 757 n. 8 (Miss. 1987); Jackson v. Hollowell, 685 F.2d 961, 966 (5th Cir.1982).
This Court has held that a surety may recover reasonable and necessary expenses, but may not recover unnecessarily incurred expenses. Whitworth v. Tilman, 40 Miss. 76, 81 (1866). In like fashion, the Alabama Supreme Court has held that a surety must act in good faith and "cannot needlessly, in utter disregard of the burdens he is imposing on his indemmtor, incur attorneys' fees, and in no case such as are excessive and unreasonable in amount." Kilgore v. Union Indemnity Co., 222 Ala. 375, 377, 132 So. 901, 902 (1931). Arkansas follows the same reasoning. *210 "To be recoverable by the indemnitee, the attorneys' fees must be reasonable, proper, necessary and incurred in good faith and with due diligence." U.S.F. & G. v. Love, 260 Ark. 374, 376, 538 S.W.2d 558, 559 (1976). In Central Towers Apartments, Inc. v. Martin, 61 Tenn. App. 244, 453 S.W.2d 789, 800 (1970), the Tennessee Court held:
When the principal and his indemnified surety are sued by the obligee under the surety's bond, and the surety exercises its right under the indemnity agreement of the principal to hire its own separate counsel and incur litigation expense in defense of the action, the liability of the principal for the attorney fees and expenses thus incurred by the surety depends upon whether, under all of the facts of the case, it was reasonably necessary for the surety to so act in its own defense, and whether the surety acted in good faith toward the principal.
The Ohio Court of Appeals has permitted recovery of only those attorneys' fees which are both reasonable and have a relation to the surety's liability on the bond. Sentry Insurance Co. v. Davison Fuel & Dock, 60 Ohio App.2d 248, 396 N.E.2d 1071 (Ohio Ct. App. 1978). Sentry also rejects recovery by the surety for duplication of services, i.e., services which were simultaneously being rendered competently by the principal's counsel. In the case at bar, the trial court properly required that Western Surety be made a party. The surety company then elected to participate together with the three other attorneys representing Joyce Perkins and charge all its costs to the principal. However, "a proper construction of the clause of indemnification requires... [Perkins] to meet the fair expense of counsel fees reasonably incurred and not necessarily the amount which [Western Surety] unilaterally agreed to or did pay to its lawyer." Fireman's Fund Insurance Co. v. Levy, 21 Misc.2d 1027, 197 N.Y.S.2d 45, 46 (N.Y. Sup. Ct. 1960) (Emphasis added).
This Court holds that under the indemnification agreement here the surety is entitled to reimbursement for legal costs only if it is necessary for the surety to retain separate counsel, if the amount of the fees claimed is reasonable, and if the surety has acted in good faith toward the principal. The Tennessee Court in Central Towers, supra, used the following factors to consider reasonable necessity:
... the amount of risk to which the surety was exposed; whether the principal was solvent; whether the surety has called on the principal to deposit with it funds to cover the potential liability; whether the principal on demand by the surety to deposit with it the amount of the claim has refused to do so; whether the principal was notified of the action and given opportunity to defend for itself and the surety; whether the principal hired the attorney for both himself and the surety; whether the principal notified the surety of the hiring of the attorney; the competency of the attorney hired by the principal; the diligence displayed by the principal and his attorney in the defense; whether there is a conflict of interest between the parties; the attitude and cooperativeness of the surety; and the amount charged and diligence of the attorney hired by the surety.
453 S.W.2d at 800.
In view of the remand of this case for a factual determination of the paternity issue at the conclusion of the remanded case, the trial court may again consider the issue of attorney's fees. However, the trial court must first determine the factual issue of whether it was reasonably necessary for Western Surety to employ separate counsel to protect its interest, whether the surety acted in good faith in incurring those expenses with its principal, and lastly whether the fees and expenses claimed were reasonable in amount. This Court's primary concern in this case is whether such fees were necessary. The Court vacates the award of attorney's fees of $39,155.65 as prematurely awarded.
REVERSED, ATTORNEY'S FEES VACATED, AND CAUSE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
*211 ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, P.J., concurs with separate written opinion in which DAN M. LEE, P.J., and ANDERSON, PITTMAN and BLASS, JJ., concur.
HAWKINS, Justice, concurring:
Perkins by her sworn petition for appointment as administratrix of Robert Taylor's estate claimed to be his natural daughter. Taylor's wife predeceased him and he had no other children or children of deceased children, and if Perkins' petition was true, then she constituted his sole and only heir-at-law, and the sole party in interest in his estate.
She fully complied with Mississippi Code Annotated, Sections 91-7-63 and 91-7-67 (1972) dealing with appointments of administrators, and was lawfully appointed and qualified as administratrix of his estate. She also fully complied with MCA § 91-7-145 (Supp. 1988), in giving the ninety-day notice to all creditors of this estate.
As stated, she took all lawful and proper actions in qualifying and carrying out her duties as administratrix of this estate, and if her petition was true, there was no occasion under MCA §§ 91-1-27 or 91-1-29 to summons Taylor's aunts and uncle (the closest blood relatives, exclusive of Perkins), because in such event they had no right or interest whatsoever in Taylor's estate. Her qualification as administratrix claiming to be his sole child and sole heir met the requirements of both MCA §§ 91-1-27 and 91-1-29.
MCA § 91-1-15(3) provides two ways in which a child born out of wedlock may inherit, absent a subsequent marriage between the mother and father.
First, secure an adjudication of paternity in a legal proceeding initiated during the father's lifetime. MCA § 91-1-15(3)(b). This obviously was not followed in this case.
The second, MCA § 91-1-15(3)(c), is an heirship proceeding under MCA §§ 91-1-27 and 91-1-29, and in such case the claimant must file a petition within one year of the intestate's death, if there has been no appointment of an administrator, or within ninety days after the first publication of notice to creditors in event there is an administration, whichever is less. Perkins' petition for appointment as administratrix was well within one year.
In this case there was manifestly no need for Perkins to file an adversarial claim of heirship with an administrator, because she was the administratrix herself, purporting and claiming to be Taylor's sole and only heir-at-law and sole and only party in interest in his estate.
She likewise complied with §§ 91-1-27 and 91-1-29 in securing for herself the appointment as administratrix under MCA § 91-7-63 and 91-7-67, because she was the sole and only heir, under the allegations of her petition.
Simply put, Perkins did everything necessary under the statutes to assert that she was the natural daughter of Taylor and his sole and only heir-at-law. The chancellor erred in holding that she failed to comply with these statutes in asserting her claim.
Now, it could very well be true that Perkins did not give sufficient legal notice to bar the aunts and uncle from asserting their claim in event Perkins was not shown to be Taylor's natural daughter, but no question of this nature is before us. The aunts and uncle had their day in court.
The chancellor erred in holding that Perkins failed to take the appropriate legal steps to assert her claim of being Taylor's natural daughter and entitled to inherit as such.
The chancellor should have decided the factual issue of whether Perkins was the natural daughter of Taylor.
I believe this is the majority's holding and, therefore, concur.
DAN M. LEE, P.J., ANDERSON, PITTMAN and BLASS, JJ., join this opinion.