Rockingham
No. 2004-354

GULF INSURANCE COMPANY

v.

AMSCO, INC. & a.

Argued: September 15, 2005
Opinion Issued: December 28, 2005

*Duncan J. MacCallum*, of Portsmouth, on the brief, and *Louis Movitz*, of Boston, Massachusetts, orally, for the plaintiff.

*Hinckley, Allen & Snyder, LLP*, of Concord (*Christopher H.M. Carter* on the brief and orally), for defendant AMSCO, Inc.

BRODERICK, C.J. The plaintiff, Gulf Insurance Company (Gulf), appeals the decision of the Superior Court (*Coffey*, J.): (1) permitting defense expert Peter Hermes to testify; (2) ruling that attorney's fees and other expenses incurred by Gulf on certain bond claims were not recoverable under the parties' indemnity agreement; and (3) rejecting Gulf's request for attorney's fees under the indemnity agreement with its principal for its pursuit of the present case. The defendants are AMSCO, Inc., English Wood Associates, Inc., Sara L. Clark, William D. Clark, Fernande Clark, Anthony C. Clark, Mark S. Clark and Laura D. Clark (collectively referred to as "AMSCO"). AMSCO cross-appeals, arguing that the trial court erred by: (1) ruling that it had agreed to pay Gulf over $14,000 in attorney's fees and expenses Gulf incurred on two bond claims; and (2) refusing to allow it to amend its pleadings to pursue counterclaims for Gulf's alleged breach of contract and violation of the Consumer Protection Act, RSA chapter 358-A. We affirm.

The following facts either were found by the trial court or are otherwise not disputed by the parties. In January 1997, Gulf, as surety, and AMSCO, as principal, entered into a general agreement of indemnity (GAI) in connection with a series of performance bonds issued by Gulf guaranteeing AMSCO's performance on various construction projects. At different times, claims were made against three bonds involving disputes between AMSCO and three companies: Beacon Properties, Panciocco Builders, Inc., and Brita Corporation. These disputes have since been resolved, and the present matter involves a lawsuit Gulf brought against AMSCO seeking recovery under the GAI for costs and expenses it incurred related to the three bond claims.

In the fall of 1999, Beacon Properties made a claim against a performance bond issued by Gulf for AMSCO's alleged failure to complete a construction project. Gulf assented to AMSCO handling the Beacon defense, and AMSCO retained legal counsel to represent them both. The dispute was ultimately settled without Beacon filing suit and without Gulf making any payments under the bond. Gulf then sought indemnification from AMSCO for $1,443.23 it allegedly incurred in loss adjustment expenses generated by Contract Operations Planning, Inc. (COP), a company hired by Gulf to investigate and adjust bond claims.

Panciocco Builders also made a claim against a bond Gulf had issued to AMSCO for the contract between AMSCO and Panciocco, and in 1999, Panciocco brought suit against Gulf and AMSCO. Again, Gulf permitted AMSCO to handle the defense, and AMSCO promptly retained legal counsel to represent them both. Ultimately, AMSCO and Panciocco settled the suit without Gulf making any payments under the bond. Subsequently, Gulf demanded indemnification from AMSCO for legal fees and adjustment expenses in excess of $20,000 it allegedly incurred. The amount sought included fees charged by three different law firms, an independent engineering consultant, and COP.

Finally, in June 2000, Brita Corporation made a claim against a Gulf performance bond for damages allegedly associated with AMSCO's substandard performance on a construction project. Gulf denied the claim, and Brita filed suit against Gulf and AMSCO. AMSCO retained legal counsel who initially appeared for both Gulf and AMSCO. Thereafter, Gulf hired its own attorney, who appeared on its behalf, and demanded that AMSCO pay Gulf $84,131.06 before it would allow AMSCO to assume Gulf's defense in the Brita action. The amount sought by Gulf included over $21,000 in expenses Gulf allegedly incurred in the Beacon and Panciocco matters, over $3,000 in expenses in the Brita case, and $60,000 for collateral, representing Brita's settlement demand. Gulf's subsequent correspondence conditioned its willingness to allow AMSCO to assume

Gulf's defense upon AMSCO's payment of the fees and adjustment expenses allegedly associated with the Beacon and Panciocco matters, without mention of the demand for collateral. AMSCO did not make payment to Gulf, and the parties continued their defense to the underlying action with separate counsel.

In January 2001, Gulf filed suit against AMSCO to recover attorney's fees and adjustment expenses allegedly incurred in the Beacon, Panciocco and Brita matters, as well as to recover attorney's fees under the GAI for pursuing its right to indemnity. The expenses, which totaled $143,714.43, included $1,443.23 in the Beacon matter, $20,502.83 in the Panciocco matter, and $121,768.37 in the Brita matter and the indemnity action. In September 2003, AMSCO and Brita settled Brita's claim for $50,000; the dispute continued, however, between AMSCO and Gulf for indemnity payments under the GAI.

The trial court conducted a multi-day trial on the indemnity action. Gulf appeals, challenging the trial court's admission of defense expert testimony, its rejection of certain claimed attorney's fees and loss adjustment expenses in the Panciocco and Brita matters, and its failure to award it attorney's fees under the GAI. AMSCO cross appeals, arguing that the trial court erred by ruling it had entered into a contract to pay Gulf in excess of $14,000 for legal fees and loss adjustment expenses in the Beacon and Panciocco matters, and by refusing to permit it to pursue certain counterclaims.

I

Gulf first argues that the trial court erred in permitting AMSCO's expert witness, Peter Hermes, to testify because he was disclosed only one week before trial. Gulf contends that AMSCO's pretrial statement, which was filed about eighteen months prior to trial, did not list any expert witness or otherwise disclose an intent to rely upon expert testimony. According to Gulf, AMSCO never offered any good cause to excuse its late disclosure, and the trial court's finding that AMSCO's expert disclosure did not come as "any surprise" to Gulf is not supported by the record.

 "In superior court, a party is entitled to disclosure of the opposing party's experts, the substance of the facts and opinions about which they are expected to testify and the basis of [their] opinions." *Porter v. City of Manchester*, 151 N.H. 30, 54 (2004); *see* SUPER. CT. R. 35(b)(3), (f), 62. While Gulf makes no claim that it specifically requested expert disclosure under Superior Court Rule 35, AMSCO filed a pretrial statement in which it was required to list all witnesses expected to testify at trial pursuant to Superior Court Rule 62. Under that rule, "only witnesses listed in the Pre-

trial Statement [are] allowed to testify" absent good cause. Further, under the Preface to the Superior Court Rules, the trial court may waive the application of any rule "[a]s good cause appears and as justice may require." The policy of disclosure of expert witnesses rests upon the premise that "justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." *Wong v. Ekberg*, 148 N.H. 369, 372 (2002) (quotation omitted). Because the trial court retains discretion to admit expert testimony, *In the Matter of Letendre & Letendre*, 149 N.H. 31, 37 (2002), we review its decision in order to determine whether it unsustainably exercised its discretion, *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). Under the unsustainable exercise of discretion standard, Gulf must show that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of [its] case." *Id.*

The trial court ruled that AMSCO's late disclosure of its intent to present expert testimony through Peter Hermes came as no surprise to Gulf. At trial, the parties engaged in a colloquy with the court concerning the merits of Gulf's motion to preclude Hermes' testimony. While AMSCO's pretrial statement does not list Hermes as a witness, the court recalled that during a pretrial conference it had discussed with the parties AMSCO's intended reliance upon expert testimony as well as the subject area of the expected testimony. While Gulf acknowledged the discussion, it denied that they had discussed the specific facts related to its claim about which AMSCO's expert would testify. It contended that, due to the late disclosure of the specific nature of the expected testimony, it was unable to depose Hermes or obtain a rebuttal expert. In reply, however, AMSCO contended that it had provided Gulf with Hermes' curriculum vitae in September 2002, a year prior to trial. Given this record and the deference we accord to the trial court in the exercise of its discretion, we cannot conclude that it was error to permit AMSCO's defense expert to testify at trial. *See id.*

II

Gulf next argues that the trial court erred by failing to apply the express terms of the GAI when it denied Gulf's request for indemnity. Gulf contends that AMSCO may only avoid its obligation to indemnify Gulf for its loss adjustment expenses and associated attorney's fees by establishing that Gulf acted in "bad faith" in incurring them. According to Gulf, even under some lesser standard such as subjective or objective reasonableness, the evidence compelled recovery of its claimed fees and

expenses under the GAI. We hold that the trial court's decision is legally sound and supported by the evidence.

The trial court ruled that the plain language of the GAI required AMSCO to indemnify Gulf only for "reasonable" expenses, and that the GAI contained a burden-shifting provision requiring AMSCO to prove that Gulf's claimed expenses were unreasonable. It delineated two areas of inquiry: "whether it was reasonable for [Gulf] to retain separate counsel in the Panciocco and Brita matters and whether the amounts of the fees [were] reasonable." Because the trial court already had ruled that AMSCO had agreed under a separate contract to pay more than $14,000 of the Beacon and Panciocco expenses, it reviewed the reasonableness of approximately $7,500 in fees and expenses in the Panciocco matter, and over $121,700 in fees and expenses in the Brita matter and GAI claim. These costs represented expenses for COP and attorney's fees for counsel retained by Gulf. The trial court ruled that it was unreasonable to require AMSCO to pay for fees charged by COP because such costs constituted normal and expected administrative and housekeeping expenses associated with Gulf's ordinary cost of doing business and were not otherwise recoverable under the GAI. The court further ruled that Gulf's retention of its own legal counsel on both the Panciocco and Brita matters was unreasonable for any purpose other than to monitor the litigation. Accordingly, the court awarded Gulf "$852 in pre-lawsuit and monitoring fees in the Panciocco case and $10,774.73 in monitoring fees in the Brita case," plus interest.

█ We first examine whether the trial court properly interpreted the GAI as requiring AMSCO to prove Gulf's claimed expenses were unreasonable, rather than incurred in bad faith, to avoid indemnification under the GAI. We interpret an indemnity contract in the same manner as we do contracts generally, seeking to discern the parties' intent at the time the contract was made. *Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623 (1980). When there is an express contract for indemnity, the rights of the surety are not to be determined by general indemnity principles, but by the letter of the contract for indemnification. *Fidelity and Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.*, 722 F.2d 1160, 1163 (4th Cir. 1983). We limit our search for the parties' intent to the express words of the contract, *Commercial Union Assurance*, 120 N.H. at 623, and assign the words and phrases used by the parties the common meaning that would be given to them by a reasonable person, *N.H. Water Res. Council v. Steels Pond Hydro*, 151 N.H. 214, 215 (2004). The interpretation of a contract is a question of law, and thus we review the

trial court's decision *de novo. Sherman v. Graciano,* 152 N.H. 119, 121 (2005).

Several paragraphs of the GAI must be read together to discern the nature of Gulf's indemnity rights. Paragraph 2(A) provides that AMSCO must indemnify Gulf "for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel," and for other enumerated expenses. This comprehensive provision is modified by paragraph 3(A), which states that Gulf may recover for any payment or compromise of "any claim, demand, suit, judgment or expense arising out of any [bond]" so long as "the same was made by [Gulf] in the reasonable belief that it was liable for the amount disbursed, or that such payment or compromise was reasonable under all the circumstances." Therefore, Gulf's claimed loss adjustment expenses must be "reasonable under all the circumstances" for Gulf to secure indemnification from AMSCO. Even assuming the "reasonable belief" clause in paragraph 3(A) applies to this case and incorporates some subjective element as Gulf contends, the term "reasonable" contains an objective component. In other words, Gulf must not only have subjectively believed that the expenses incurred were reasonable, but the belief must have been objectively reasonable as well. *Cf. Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.,* 151 N.H. 649, 653 (2005) ("reasonable belief" in insurance contract requires both a subjective belief and that such belief be objectively sound). Nowhere in the GAI does the phrase "good faith," "bad faith" or similar language appear.

 Furthermore, paragraph 3(B) provides that Gulf's presentment of "an itemized statement" of any payment or compromise of any claim, along with certain verification requirements, constitutes "prima facie evidence of the fact and amount of the liability of [AMSCO] under this Agreement." This provision merely transfers the burden to AMSCO to prove that Gulf's claimed costs were unreasonable. *See Fallon Electric Co., Inc. v. Cincinnati Ins. Co.,* 121 F.3d 125, 129 (3d Cir. 1997) ("prima facie" evidence provision establishes who bears burden of proof, not the standard by which the standard is proved). Accordingly, reading the contractual provisions together, we conclude that Gulf's proper presentment of losses and expenses it incurred on the bond matters created a rebuttable presumption of its entitlement to indemnification, and AMSCO bore the burden of proving that such costs were unreasonable to avoid payment under the GAI.

In *Fallon Electric,* the Third Circuit reviewed an indemnity contract with nearly the precise language at issue in this matter. It held that the indemnitor bore

the burden of proving both that: [the surety] did not actually believe that it was liable for the attorney's fees disbursed, or that its belief in that respect was unreasonable; and [the surety] did not actually believe that the payment of such fee (as opposed to the incurrence of the fees) was reasonable under all the circumstances, or that its belief in that respect was unreasonable.

*Id.* We agree with this plain reading of the contract language.

■ Gulf argues that in order to rebut the presumption for indemnification, the GAI expressly required AMSCO to prove subjective "bad faith" through dishonest purpose, conscious wrongdoing, or breach of duty motivated by self-interest or ill will. To support its position, Gulf contends that application of the subjective good faith standard is supported by "the law in virtually every American jurisdiction." The cases cited by Gulf, however, do not support its position because they do not address indemnity contract provisions that contain "reasonable" language like that in the GAI before us. *See Fidelity & Deposit Co. of Maryland*, 722 F.2d at 1163 (contract required indemnity for monies paid in "good faith"); *Com'l Ins. Co. of Newark v. Pacific-Peru Const.*, 558 F.2d 948, 953 n.4 (9th Cir. 1977) (contract required indemnity for all liability of "whatever kind or nature"); *Safeco Ins. Co. of America v. Criterion Inv. Corp.*, 732 F. Supp. 834, 836 (E.D. Tenn. 1989) (same regarding "good faith"); *Elmore v. Morrison Assur. Co. Inc.*, 502 So. 2d 378, 379-80 (Ala. 1987) (no reference to specific contract language); *U.S. Fidelity & Guar. Co. v. Napier Elec.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978) (same regarding "good faith"); *Hartford Acc. and Indem. Co. v. Millis Roofing*, 418 N.E.2d 645, 646 (Mass. App. Ct. 1981) (same regarding "good faith"); *American Employers' Ins. Co. v. Horton*, 622 N.E.2d 283, 284 (Mass. App. Ct. 1993) (same regarding "good faith"); *Continental Casualty Co. v. Marman Develop. Corp.*, 198 N.Y.S.2d 375, 376 (Sup. Ct. 1960) (same regarding "good faith"); *Fairfax County v. Culbertson Constr. Co.*, 1987 WL 488767 *1 n.1 (Va. Cir. Ct. Nov. 17, 1987) (contract required indemnity for all liability of "whatever kind or nature" and for monies paid "in good faith"). Accordingly, we conclude that the trial court applied the appropriate standard when it required AMSCO to prove that Gulf's claimed loss adjustment expenses were unreasonable in order to avoid its obligation to provide indemnification under the GAI.

We next examine the trial court's conclusion that AMSCO satisfied its burden. The trial court ruled that Gulf's claimed attorney's fees and expenses in the Panciocco and Brita matters, other than legal expenses for case monitoring, were unreasonable. The trial court identified two principal reasons to support its decision. First, it concluded that Gulf's

recovery of the COP expenses was unreasonable because they constituted administrative and housekeeping expenses, which were an ordinary cost of doing business and not recoverable under the GAI. Second, it determined that legal fees not associated with monitoring the litigation were not recoverable because it was unreasonable for Gulf to hire counsel where AMSCO had provided it with counsel. Gulf challenges both rulings, and we address each in turn.

■ With respect to the COP expenses, Gulf argues that COP is a distinct entity from Gulf and challenges the trial court's reliance on *Wagner v. Fireman's Fund Insurance Co.*, 352 F.2d 410 (10th Cir. 1965), to disallow COP expenses. Distinct entity or not, ample evidence supports the trial court's conclusion that such expenses were administrative and housekeeping in nature. *See Crown Paper Co. v. City of Berlin*, 142 N.H. 563, 566 (1997) (finding of fact upheld unless unsupported by the evidence). Furthermore, with respect to the recoverability of such expenses under the GAI, we recognize that the GAI extends comprehensive indemnity coverage for losses and expenses incurred "by reason of the failure of [AMSCO] to perform or comply with the covenants and conditions of this Agreement" or "in enforcing any of the covenants and conditions of this Agreement against [AMSCO]." We, however, agree with courts that hold that indemnity contracts, even broadly stated, do not extend a "blank check" for a surety to recover all fees and expenses incurred or paid by it in its sole discretion. *See, e.g., Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982). We therefore conclude that corporate overhead expenses, such as administrative services, are so remotely connected to losses suffered on a bond as to fall outside of the intended bounds of generally stated contractual recovery provisions, such as the ones before us. *See Sentry Ins. Co. v. Davison Fuel & Dock Co.*, 396 N.E.2d 1071, 1074 (Ohio Ct. App. 1978) (disallowing indemnity recovery for proportional part of corporate overhead costs); *Wagner*, 352 F.2d at 413-15 (affirming trial court's decision denying recovery of certain expenses as ordinary housekeeping and administrative expenses of surety company).

Turning to Gulf's legal expenses, Gulf challenges the trial court's ruling that its retention of legal counsel was unreasonable. To determine whether a surety's retention of separate legal counsel is "reasonable," courts review various factors, including:

> "the amount of risk to which the surety was exposed; whether the principal was solvent; whether the surety has called on the principal to deposit with it funds to cover the potential liability; whether the principal on demand by the surety to deposit with it the amount of the claim has refused to do so; whether the

principal was notified of the action and given opportunity to defend for itself and the surety; whether the principal hired the attorney for both himself and the surety; whether the principal notified the surety of the hiring of the attorney; the competency of the attorney hired by the principal; the diligence displayed by the principal and his attorney in the defense; whether there is a conflict of interest between the parties; the attitude and cooperativeness of the surety; and the amount charged and diligence of the attorney hired by the surety."

*Perkins v. Thompson*, 551 So. 2d 204, 210 (Miss. 1989) (quoting *Central Towers Apartments, Inc. v. Martin*, 453 S.W.2d 789, 800 (Tenn. App. 1970)); *see Jackson*, 685 F.2d at 966 n.15 (same).

█ Concerning the Panciocco matter, Gulf contends that as a result of incurring more than $20,000 in loss adjustment expenses, including COP, legal fees and a construction expert, it helped resolve Panciocco's $84,000 claim. The trial court concluded that "it was unreasonable for [Gulf] to hire its own attorney after tendering defense of the Panciocco suit to [AMSCO] for any reason but to monitor the case." Gulf points to no evidence suggesting it was necessary for it to retain professionals, independent of Gulf's legal counsel, to resolve the Panciocco claim and pass on these costs to AMSCO when AMSCO, with Gulf's approval, had retained and paid for legal counsel who represented them both in the defense against Panciocco. It does not challenge the competency and diligence of AMSCO's legal counsel, factors pertinent to the reasonableness of a surety's decision to retain separate legal counsel, *see Perkins*, 551 So. 2d at 210. Accordingly, the trial court's ruling stands.

Regarding the attorney's fees it incurred in the Brita matter, Gulf contends that it was entitled to refuse to tender its defense to AMSCO and to hire its own counsel because: (1) AMSCO failed to post collateral as demanded; (2) Gulf had unique defenses in the underlying claim that AMSCO "would not have had much incentive" to pursue; and (3) a conflict of interest existed between the parties caused by AMSCO's refusal to pay the loss adjustment costs on the Beacon and Panciocco matters.

█ Concerning AMSCO's obligation to post collateral, the GAI provides under paragraph 3(C):

If [AMSCO] desire[s] that a claim or demand against [Gulf] be resisted and litigated, [AMSCO] shall

(i) give notice thereof to [Gulf];

(ii) deposit simultaneously with [Gulf] cash or collateral in a form satisfactory to [Gulf] in an amount reasonably deemed by [Gulf] to be sufficient to cover the claim or demand and interest thereon to the probable date of disposition; and

(iii) deposit simultaneously with [Gulf] cash or collateral satisfactory to [Gulf] in an amount sufficient to cover the expenses and fees of defense, or take over the resistance and litigation of the claim.

While the language in paragraph 3(C)(ii) establishes Gulf's contractual right to collateral "in an amount reasonably deemed by [it] to be sufficient to cover the claim or demand and interest," the trial court was unpersuaded by Gulf's claim at trial that it refused to tender defense to AMSCO because AMSCO failed to post any collateral to cover the Brita claim. It concluded that while Gulf initially requested collateral, "subsequent letters [made] no reference to demand for collateral," but focused on securing "the loss adjustment expenses it had incurred in the Beacon and Panciocco matters." Because sufficient evidence exists to support the trial court's factual finding that AMSCO's failure to post collateral did not serve as the basis for Gulf's retention of its own separate legal counsel, *see Crown Paper Co.*, 142 N.H. at 566, we do not review Gulf's arguments concerning AMSCO's contractual obligation to post collateral.

We reject Gulf's contention that it refused to tender its defense to AMSCO because it had unique defenses to Brita's claim that AMSCO would not have pursued on its behalf. Because none of the correspondence from Gulf to AMSCO stated it had unique defenses that required it to retain separate counsel, the trial court found that Gulf's refusal to tender its defense was not based upon any unique defenses it may have had. Gulf does not challenge this finding. Further, the trial court observed that Gulf did not argue or present evidence to suggest that its unique defenses actually conflicted with any position AMSCO took in the Brita action, and that absent a conflict, AMSCO could have pursued these unique defenses on Gulf's behalf. On appeal, Gulf references only an inherent conflict of interest common between sureties and contractors, and generally suggests that AMSCO "would not have [had] much incentive to press legal issues that would only benefit Gulf." It fails to challenge the trial court's finding by identifying an actual conflict of interest between the parties that would have thwarted AMSCO's pursuit of any defense unique to Gulf. *See Perkins*, 551 So. 2d at 210 (factors to determine reasonableness of surety's retention of separate legal counsel include whether conflict of interest exists between parties). Therefore, we uphold the trial court's ruling that

Gulf's claim of unique defenses provided no viable basis for it to retain its own legal counsel.

Finally, we address Gulf's argument that AMSCO's failure to indemnify it for the loss adjustment expenses Gulf allegedly incurred in the Beacon and Panciocco matters justified its refusal to tender the defense in the Brita action and hire its own legal counsel. The trial court ruled that "[n]othing in the GAI allows [Gulf] to condition [AMSCO's] assumption of the defense of the Brita suit upon payment of [the] disputed expenses" in the prior matters. Gulf contends that AMSCO's failure to indemnify it in any amount constituted a default of the GAI, and that under paragraph 7(B)(iv) of the GAI, it had the right to litigate any claim in AMSCO's name and choose an attorney to defend AMSCO. Gulf, however, fails to sufficiently develop its argument for appellate review. *See In re Thayer*, 146 N.H. 342, 347 (2001).

■ Gulf's rights under paragraph 7 are intrinsically connected to paragraph 6. In particular, paragraph 7 outlines Gulf's rights should an "event of default" occur, and paragraph 6 specifically identifies occurrences that constitute an "event of default." Gulf identifies paragraph 7(B)(iv) as the linchpin for its right to seek indemnity for retaining separate counsel:

> Upon the happening of an Event of Default ... [w]ithout limiting the rights that [Gulf] might otherwise have under this Agreement or at law, [AMSCO] authorizes and empowers [Gulf] to ... assert and prosecute any right or claim hereby assigned, transferred or conveyed in the name of the Principal and to compromise and settle any such right or claim on such terms as [Gulf] considers reasonable under the circumstances.

It would appear that the right or claim Gulf is permitted to pursue is limited to those identified in paragraph 6. Certainly, whether an "event of default" has occurred to trigger Gulf's rights under paragraph 7 is dictated by the terms of paragraph 6. Both paragraphs are detailed and somewhat lengthy. Gulf makes no effort, however, to identify relevant portions of paragraph 6 or explain how the two paragraphs are intertwined. We elect not to make Gulf's argument for it, and thus we uphold the trial court's ruling that "[n]othing in the GAI allows [Gulf] to condition [AMSCO's] assumption of the defense of the Brita suit upon payment of [the] disputed expenses" in the prior matters.

Gulf also attempts to characterize AMSCO's nonpayment of the fees in the prior matters as creating some conflict of interest between it and AMSCO in the Brita action. The record, however, does not demonstrate

that Gulf pursued this contention before the trial court. *See Broughton v. Proulx*, 152 N.H. 549, 552 (2005) (argument not raised in trial court not preserved for appellate review). Gulf relies upon two isolated portions of testimony to demonstrate a conflict of interest as a basis for retaining separate counsel. In one, a defense expert generally acknowledged that the relationship between surety and a contractor inherently contains an adversarial component. In the other, the Gulf expert testified that he never witnessed an occasion in which a principal insisted upon retaining counsel to represent both parties while simultaneously resisting indemnity obligations. These isolated portions of testimony, without more, do not sufficiently establish that Gulf sought the trial court's consideration of a conflict of interest between the parties created by AMSCO's failure to make any indemnification payments in the Beacon and Panciocco matters as a separate legal basis for Gulf having retained independent legal counsel in the Brita action. Accordingly, we will not consider Gulf's claim in this regard.

Finally, because we uphold the trial court's decision that it was unreasonable for Gulf to seek indemnification from AMSCO for its separate legal counsel in the Brita action, we do not address Gulf's arguments pertaining to the reasonableness of the amount of the attorney's fees its counsel generated. *Ideal Electronic Sec. Co. v. Intern. Fidelity Ins.*, 129 F.3d 143, 150 (D.C. Cir. 1997) (reasonableness of amount of legal fees separate from propriety of hiring individual legal counsel).

In closing, we note our agreement with the Fifth Circuit in that

> an indemnity agreement is not a blank check; it does not entitle the surety company to reimbursement for legal expenses which are unreasonable or unnecessary. To hold otherwise would allow [a surety] to retain counsel and to charge attorney's fees against the indemnitor even when the surety company does not require a separate legal defense to protect its interests.

*Jackson*, 685 F.2d at 966.

### III

Gulf next challenges the trial court's decision that Gulf was not contractually entitled to attorney's fees incurred in the present action because AMSCO did not breach the GAI. It argues that the evidence at trial compelled the conclusion that AMSCO admitted liability for over $14,000 in loss adjustment fees due in the Beacon and Panciocco matters. Therefore, according to Gulf, AMSCO's failure to pay that undisputed sum constituted a breach of the GAI which, under the contract, entitled it to

attorney's fees incurred for pursuing its indemnity rights in the present action. Gulf further argues that the trial court erred in precluding it from questioning AMSCO's former counsel, Ralph Suozzo, about certain communications between opposing counsel which would have established AMSCO's admission of liability for more than $14,000. We do not address the merits of Gulf's arguments, however, because it attempts to assert a new argument regarding the nature of the parties' 2002 communications not properly presented to the trial court on the record before us. *See Holyoke Mut. Ins. Co. v. Carr*, 130 N.H. 698, 699 (1988) (arguments not adequately raised below not addressed on appeal).

Prior to trial, Gulf filed a motion to enforce partial agreement. The motion itself is not part of the appellate record. According to the trial court's order, Gulf alleged that "the parties [had] entered into two separate agreements regarding partial payment of [its] loss adjustment expenses under the Beacon and Panciocco bonds." The trial court reviewed separate time frames during which the parties discussed resolving Gulf's claims for fees in those matters. Regarding the 2001 discussions, the trial court ruled that the parties had engaged in settlement negotiations that ultimately failed. For the 2002 time frame, the trial court ruled that the parties had entered into an agreement for AMSCO to pay Gulf $14,393.56 of the expenses incurred in the Beacon and Panciocco matters. When addressing whether Gulf was entitled to attorney's fees under the GAI for its pursuit of the present indemnity action, however, the trial court ruled that AMSCO did not breach the GAI, and thus Gulf was not entitled to attorney's fees for pursuing the indemnity action.

We do not address Gulf's argument that, rather than entering into a separate contract, AMSCO conceded liability under the GAI for the more than $14,000 in loss adjustment fees, and thus breached the GAI when it failed to pay the fees. The record before us fails to show that Gulf pursued this position in its motion before the trial court. The trial court characterized the motion as seeking a ruling that the parties had entered into two separate agreements regarding partial payment of Gulf's loss adjustment expenses under the Beacon and Panciocco bonds. Because the record does not contain the underlying motion, we cannot review the validity of the trial court's characterization of Gulf's argument. Further, the court expressly reviewed the legal elements of contract formation and ruled that the contract was supported by sufficient consideration. Thus, while the trial court decided Gulf's motion on the premise that the parties had entered into a contract independent of the GAI, the record lacks any motion for reconsideration contending that the trial court erred in its understanding of the legal basis for Gulf's claim for $14,393.56. *See Penrich, Inc. v. Sullivan*, 140 N.H. 583, 590 (1995) (issues should be raised

at earliest possible time to give trial court opportunity to come to sound conclusions and correct any errors in first instance). Accordingly, we do not address Gulf's arguments that AMSCO conceded partial liability under the GAI on the Beacon and Panciocco matters.

## IV

On cross-appeal, AMSCO advances three arguments challenging the trial court's ruling that it entered into a contract to pay the $14,393.56. First, it contends that no enforceable agreement could have existed because Gulf refused to issue a release, and a release was its sole motivation in resolving the Beacon and Panciocco matters for payment of a compromised sum in order to assume Gulf's defense in the Brita case. We, however, do not stand in the shoes of the trial court on factual matters, such as the existence and terms of a contract. *Chisholm v. Ultima Nashua Indus. Corp.*, 150 N.H. 141, 145 (2003); *see Appeal of Land Acquisition*, 145 N.H. 492, 494 (2000) (whether binding settlement agreement exists is question of fact). Although evidence exists supporting AMSCO's view of the negotiations, the trial court's ruling concerning the scope of the parties' intended agreement is supported by the record. *Estate of Younge v. Huysmans*, 127 N.H. 461, 465 (1985). Accordingly, we uphold the trial court's decision.

Second, AMSCO argues that any promise it made to pay Gulf was not supported by sufficient consideration. The trial court ruled that Gulf's promise to refrain from conducting two depositions and pursuing an additional claim against AMSCO constituted valuable consideration for AMSCO's promise to make partial payment. AMSCO contends, however, that after it failed to make payment, Gulf could have chosen to pursue the depositions and additional claim, yet it failed to do so for the eighteen-month time frame prior to trial. According to AMSCO, Gulf could not have detrimentally relied upon its promise to pay and thus no consideration supported the existence of a separate contract. We disagree. Gulf's decision to uphold its portion of the bargain negates neither AMSCO's breach of its promise to pay nor the exchange of meaningful consideration for the contract. At the time AMSCO promised to pay, Gulf exchanged meaningful consideration by refraining from pursuing litigation avenues that it had the right to pursue. *See Chisholm*, 150 N.H. at 145 (consideration present when benefit to promisor or detriment to promisee). Accordingly, the trial court's conclusion that the contract was supported by adequate consideration is supported by both the record and the law.

■■ Third, AMSCO contends that any agreement compelling it to pay excessive and unreasonable attorney's fees and expenses would be unenforceable as a violation of Rule 1.5 of the New Hampshire Rules of Professional Conduct. Rule 1.5 states: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." The trial court found that the parties considered the alleged excessive nature of the fees when negotiating a sum. It ruled that while the fees in the Panciocco matter may have been "unreasonable" under the contractual standard in the GAI, "they do not rise to the level of being 'illegal or clearly excessive'" under Rule 1.5. Because the factual findings are supported by the record, we will not disturb the trial court's decision. *See Younge*, 127 N.H. at 465.

## V

Finally, we turn to AMSCO's argument on cross-appeal that the trial court erred in rejecting its request to amend its pleadings and assert counterclaims against Gulf for breach of contract and for violation of the Consumer Protection Act, RSA chapter 358-A. The trial court retains the discretion to decide whether to allow a counterclaim, *City of Concord v. 5,700 Square Feet of Land*, 121 N.H. 170, 172 (1981), and we review its decision for an unsustainable exercise of discretion, *see Bezanson v. Hampshire Meadows Dev. Corp.*, 144 N.H. 298, 303 (1999); *cf. Lambert*, 147 N.H. at 296 (explaining unsustainable exercise of discretion standard).

Two days prior to trial, AMSCO moved to amend its pleadings to file counterclaims based upon certain billing records. It argued that the trial court should permit its amendment because it had received a substantial portion of the billing records from Gulf for the first time just one week before trial, and the counterclaims shared the same core facts with Gulf's claims. The trial court denied AMSCO's motion to amend as "untimely."

■■ While counterclaims are generally permitted where appropriate to "avoid circuity of action, multiplicity of suits, inconvenience, expense, unwarranted consumption of the court's time, and injustice by resolving all controversies and granting full relief in one proceeding," *Concord*, 121 N.H. at 172, we cannot conclude that the trial court's decision constituted an unsustainable exercise of discretion. AMSCO did not dispute Gulf's proffer to the trial court that AMSCO failed to conduct any formal discovery to seek out its billing records in a timely manner. Based upon this record and the lateness of AMSCO's request to amend, we will not disturb the trial court's decision. *See* SUPER. CT. R. 33 (party cannot file

counterclaim after thirty days from the return date except by leave of court).

*Affirmed.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.